## Case No. 13,590.

### SUFFOLK BANK v. LINCOLN BANK.

[3 Mason, 1.] [2]

Circuit Court, D. Maine. May Term, 1821.

BANKS—BANK-BILLS—HOW PAYABLE.

1. The holder of bank-bills is entitled to be paid in specie the amount of the bills, upon a demand within the usual banking hours of the bank.

[Cited in Reapers' Bank v. Willard, 24 Ill. 437.]

---

[1] [Reported by Samuel Blatchford, Esq.]
[2] [Reported by William P. Mason, Esq.]

2. He is not obliged to take foreign gold or silver coin at the bank count, but the payment must be by weight.

3. A bank is bound to keep its money counted, or weighed, or to employ servants sufficient to count it or weigh it, so as to pay all demands made within the usual bank hours.

4. A bank holding the bank-bills of another bank and demanding payment of the same at the banking house of the latter, is not bound to receive its own bills in payment, but may demand specie.

5. A fortiori it is not bound to receive other bank-bills, or a draft in payment.

Assumpsit. This action was brought for the recovery of about $3,000, together with the additional damages of two per cent. per month, authorized by the laws of Massachusetts, in cases where any bank shall refuse or neglect to pay its bank-bills in specie on demand. The facts were as follows: A runner or agent from the Suffolk Bank, established at Boston, presented at the banking house of the Lincoln Bank at Bath, their bank-bills to the amount above stated for payment, and early in the morning, and very soon after the commencement of the usual banking hours. The cashier immediately offered to pay the amount in bills of the banks in Boston, and among others, partly in those of the Suffolk Bank, or by a check or draft on a bank in Boston; both of which proposals were declined by the agent, who demanded payment in specie. The cashier then began to count out small pieces of silver change. It occupied him until near the hour of closing the bank, to count in this way, about five hundred dollars. He tendered no gold, and no silver of a larger denomination than one quarter of a dollar, and no more of that, than would have amounted in the whole to one thousand dollars, which could not have been counted at the rate at which the cashier was counting, within the bank hours of the day, which were from nine o'clock a. m., until one o'clock, p. m. The agent offered to take the specie at the count of the bank, but the cashier declined so to deliver it; and the agent being unable to procure the specie, left the bank with his bills, a very short time before the closing of the bank. The Suffolk Bank treated these facts as a case of refusal or neglect to pay the bills, and commenced the present action accordingly.

Mr. Longfellow, for plaintiffs.
Ames & Whitman, for defendants.

STORY, Circuit Justice (charging jury). The act of Massachusetts (St. 1809, c. 38) under which this suit is brought, declares, that, "if any incorporated bank shall refuse or neglect to pay on demand, any bill or bills by such bank issued, such bank shall be liable to pay to the holder of such bill or bills after the rate of two per cent. per month on the amount thereof, from the time of such neglect or refusal, to be recovered as additional damages in any action against the bank for the recovery of the said bill or bills." It is the duty of every bank to pay its bills in specie on demand, if such demand is made at the bank within the usual banking hours, and the omission to pay under such circumstances, is a neglect or refusal within the meaning of the act. There is no pretence to say, that a bank has a right to delay the holder of its bills, day after day, while its officers can count out change so as to make up the amount in the smallest species of coin in their own way. Every bank is bound either to have its specie counted or weighed, and ready for delivery, or to have servants sufficient to count and weigh it, and pay it out for all demands made during the usual banking hours. I do not say, that if a very large demand be made just before the closing of a bank, so that a reasonable time may not exist to count, weigh, or deliver it, an omission to pay until the next day would, under such circumstances, be unjustifiable. Perhaps it may be, as the business of banks requires, that they should be closed at certain hours, in order to preserve regularity and correctness in their books and proceedings, that the law would, if the banking hours were reasonably extensive, allow some indulgence in this particular. But on this point, I give no opinion, as it is not necessary in the present case, and there may be strong ground to assert the strictness of the general law as to demands and payments.

Then what are the circumstances of the present case? A demand was duly made at the bank by the agent, for payment at an early hour, and quite early enough, if the cashier or the bank officers had used ordinary diligence, to have enabled them to pay any sum, however large, which the bank could be called upon to pay (for the bank hours must be presumed to be regulated by such considerations), and certainly to pay so small a sum as that now in controversy. It is said in the first place, that the cashier offered to pay the amount in Boston bills, or by a draft on Boston. But this constitutes no legal excuse. Every bank is bound to pay specie for its bills, and nothing else is a good tender. Every other arrangement is a matter of courtesy, and not of right. The Suffolk Bank was not bound even to have received its own bills in payment, if such bills to the full amount had been (and they were not) offered. It might have been unkind and harsh treatment; but still the law does not compel the Suffolk Bank to receive its own bills in payment of bills, which it holds of another bank, at least not under circumstances like the present.

In the next place, it is said, that there was in fact no delay or refusal to pay, because the cashier was employed in counting the specie, and he had a right to full time for such a purpose. Now as matter of prudence, it may be admitted to have been proper for the cashier to count his specie before delivery; but as matter of right, his

conduct cannot be justified, if his intention was thereby unreasonably to delay payment to the agent, and thus to create an impossibility of his receiving the amount on that day. I go farther and hold, that if in fact, by such conduct, the payment of the amount on the day of demand was necessarily defeated, it comes within the provision of the act, whether there was a wrongful intention or not. It was a neglect to pay, and occasioned by the want of due diligence on the part of the officers of the bank. The jury will consider, if necessary, in their view of the case, whether the cashier did not intentionally count over the small change for the mere purpose of delay and to avoid payment. The circumstances are so strong to lead to this conclusion, that little more is necessary than to recapitulate them.

But this point is the less necessary to be considered, because by the laws of the United States, foreign gold and silver coins are not a tender except by weight. The cashier therefore has no authority to make a tender of them by the bank count; and it is obvious, that if payment had been made by weight, the whole business might have been transacted in a very few minutes.

But what seems decisive in the case is, that in point of fact, no tender was made of the amount of the bills. The demand was of the whole amount of 3,000 dollars; there was no count of any specie even to the amount of 1,000 dollars. It has been intimated that each bank-bill should have been separately presented for payment and separately paid. But there is no foundation in law for that suggestion. The holder had a right to demand the whole at once as an aggregate sum, and the bank was bound to pay the whole. Then as there was a due demand, and no money to the amount paid, or tendered in payment, what ground can there be to say that the bank has not refused or neglected payment of its bills? The agent did not waive the receipt of the money, but on the contrary offered to receive it at the count of the bank, and was suffered to depart without payment.

These are the views of the law as applicable to the facts, which I deem it proper to present to the jury. But I am willing to put the case as it was put in the argument, upon somewhat narrower grounds;—first, whether the sum in controversy might not have been reasonably paid within the banking hours of the day, on which it was demanded; secondly, whether there was not an unreasonable delay of payment on the part of the officers of the Lincoln Bank; and thirdly, drawing the legal conclusion from the other points, whether, under all the circumstances, there was not, on the part of the Lincoln Bank, a refusal or neglect to pay the bills within the true sense of the act.

Verdict for the plaintiffs with the two per cent. damages.