THE REAPERS' BANK, Appellant, *v.* ELISHA W. WILLARD, JAMES M. ADSIT, and JESSE K. DUBOIS, Appellees.

·APPEAL FROM THE SUPERIOR COURT OF CHICAGO.

The proviso to the 3rd section of the act of 1857, amending the General Banking Law, is constitutional, although it was not submitted to a vote of the people.

The holder of several bank bills may present them as an aggregate sum and demand specie, and the bank is bound to pay.

In this State, corporations, like individuals, are subject to the control of the legislature, so far as it relates to the enforcing of obligations.

THIS bill alleges, that the complainant is a corporation, duly organized and in business as a bank, under the general banking law of the State of Illinois.

That Augustus H. Burley has deposited with the auditor of state, United States stocks, to the amount and value of $100,000.

That the auditor, upon the deposit of the stocks, registered and countersigned notes to the amount of $94,000, payable at the office of the complainant bank at Fairfield, in the county of Wayne, and State of Illinois, and delivered the same to the complainant to be circulated as money.

That Augustus H. Burley, on the 14th day of April, 1859, made the certificate required by section seven of the bank act, and that a copy is attached to the bill; that such certificate was duly acknowledged, and was recorded in the office of the recorder of Wayne county, and that copies thereof were filed in the offices of secretary of state and of the auditor of state.

That thereupon, the complainant became a body politic and corporate, and entitled to certain privileges and franchises secured by said law, and by contract with the State of Illinois.

That Augustus H. Burley is the president,. and Frederick G. Clapp is the cashier.

That a portion of the notes, countersigned and registered by the auditor, and delivered to the complainant, have been signed by the president and cashier, and circulated as money.

That on the 12th of October, 1859, the defendants, Adsit and Willard, were the owners and holders of a package of $500 of the circulating notes of the complainant bank, and in the forenoon of that day, by the hand of Charles A. Beecher, a notary public, residing at Fairfield, presented the same at the office of the complainant, and demanded the redemption thereof in the legal coin of the United States.

That upon such presentation, the complainant bank tendered to the defendants, Adsit and Willard, in the redemption thereof,

the gold coins of the United States for each and every bill respectively, but refused to redeem said package as a whole, or as though the same were a single obligation for that sum of money.

That the defendants, Willard and Adsit, notwithstanding such tender, caused the said notes to be protested for non-payment, by the said notary, and that the protest and notes accompanying the same, were presented to the auditor and filed in his office, and a copy of the protest delivered to the said Augustus H. Burley, president of the bank, and that a copy of the protest is attached to the bill.

That the said complainant has been notified, by the auditor, Jesse K. Dubois, to pay said notes, with twelve per cent. interest from date of protest, together with costs, protest fees and expenses.

That the auditor is about to sell the stocks deposited, to call in the circulation of complainant bank, and out of proceeds of the sale of stocks to redeem the protested notes.

The bill prays an injunction to restrain the auditor from putting the bank into liquidation.

The defendants filed their answer, (which is, however, by a subsequent order, made the answer of the defendants, Willard and Adsit, only, and the appearance of Dubois is withdrawn,) in which the said Willard and Adsit admit the general allegations in the bill of complaint, and say, that on the presentation of said package of notes for redemption by said Charles A. Beecher, agent of said Adsit and Willard, in the legal coin of the United States, the said Burley, president and acting teller of said corporation, offered to receive of said Beecher one of the bills contained in said package, and to redeem it in the gold coin of the United States, and stated that after he, said Burley, had redeemed that, he would receive another of said bills, and redeem it, and also stated that he would thus continue to receive and redeem the bills contained in said package, one by one, until the whole was redeemed, but refused to receive said package and redeem it as a whole, or to receive, treat and redeem said bills as though they were a single obligation of the amount of five hundred dollars.

A stipulation was filed in said case, by which it is agreed that the facts and circumstances relating to and connected with the presentation, demand of payment, and protest of the said protested notes, as set forth in the answer, and in the copy of the notary's protest attached to the bill, are true, and are to be considered upon the hearing.

This stipulation, by a subsequent order, is made the stipulation of the complainant and the defendants, Willard and Adsit, only.

The default of the defendant Dubois was taken for want of an answer.

On the fourth day of January, the following decree was entered in said case :

" It is ordered, adjudged and decreed, that the order enjoining the defendants, and their agents and attorneys, heretofore entered in this case, be continued and made perpetual, upon the complainant depositing in the office of Jesse K. Dubois, the auditor of the State, the legal coin of the United States, for the redemption and payment of the circulating notes described in said bill of complaint, together with twelve per cent. interest thereon from the date of the protest thereof, and all costs and protest fees and expenses, within ten days from the entry of this decree, or if appeal shall be perfected in said case, then within ten days from notice of the affirmation of such decree by the Supreme Court of the State of Illinois upon appeal, if the same shall be so affirmed ; and that on default of such payment, the complainant's bill be dismissed."

Appeal prayed and allowed.

C. HITCHCOCK, for Appellant.

WALKER, VAN ARMAN & DEXTER, for Appellees.

CATON, C. J. The decree in this cause will be affirmed, for the reasons assigned by the Chief Justice of the Superior Court of Chicago, when he rendered the decree from which this appeal is taken, whose opinion is adopted as the opinion of this court. We do not understand that opinion as extending the right of the legislature to amend the banking law beyond the rule laid down by this court in the case of the *Bank of the Republic* v. *Hamilton County*, 21 Ill. R. 53, within the limits of which we must be understood as confining ourselves.

*Opinion of* C. J. WILSON, *of the Superior Court.* The complainant is a corporation, organized under the general banking law of this State, passed in 1851, and established at Fairfield, in this State.

On the 12th of October, 1859, the defendants, Messrs. Adsit and Willard, being joint owners of $500 in the notes of said complainant, caused them to be presented to the president of the bank by a notary public, at the bank, during business hours, and redemption demanded of the same in the legal coin of the United States. The president offered to redeem the bills one by one, separately, but refused to redeem the package as one

obligation, and thereupon the notary protested the package for non-redemption.

The protested bills were presented to the auditor of public accounts by the defendants, whereupon the auditor gave notice to the president of the complainant bank to pay said bills, with interest, and as required by law ; and the bill charges, that the auditor is about to sell its stocks, and call in its circulation, and prays an injunction.

One ground upon which the complainant insists for maintaining the injunction by a decree making it perpetual, is, that the act of 1857, amending the act of 1851, is unconstitutional, because it was not submitted to the people.

It is contended that as by the constitution the original law was submitted to the people, and became a law by their approval, no law amending or in any manner affecting the corporations organized under it can be in force and operation, without a like submission to and approval by the people.

That this position is not maintainable has been recently decided by the Supreme Court, in a very able opinion by the Chief Justice, and although the court has expressed no opinion in relation to other provisions of the amendatory acts than those involving the question before them, they have decided that the act of 1851 is amendable by the legislature without being submitted to the people. It does not follow, however, that every amendment the legislature may make is constitutional, for, like all other laws, they may embrace constitutional and unconstitutional provisions.

The question, therefore, is, whether the particular provision upon which the claim of the bill holders rests, is unconstitutional. The grievance of the complainant is, that he was not allowed to redeem the bills presented, separately, instead of redeeming them all at once as a single obligation.

So far as I am advised, the uniform custom in all well-regulated banks is to redeem bills presented together as a single obligation, and it is also the common law rule, independent of the statute. This precise question arose, and was decided in the case of the *Suffolk Bank* v. *Lincoln Bank*, 3 Mason, 1. Judge Story, in his opinion, says : " It has been intimated that each bank bill should have been separately presented for payment, and separately paid. But there is no foundation in law for that suggestion. The holder had the right to demand the whole at once as an aggregate sum, and the bank was bound to pay the whole. Then, as there was a due demand, and no money to the amount paid, or tendered in payment, what ground can there be to say that the bank has not refused ? "

No case has been cited establishing a different rule, and as

the bank can gain no legal advantage, but would be subjected to great inconvenience and trouble, by adopting the other rule contended for by the complainant, this practice could subserve no purpose for the bank but to delay and harass the bill holders.

Any act of a bank having this object has been repeatedly decided to be illegal, and equivalent to a refusal to redeem. *Suffolk Bank* v. *Lincoln Bank*, 3 Mason, 1; *Hibbard* v. *Chenango Bank*, 8 Cowen, 88; *Gilbert* v. *Nantucket Bank*, 2 Am. L. J. 157.

If this view is correct, then the proviso complained of is merely declaratory of the common law, and not obnoxious to the objection of unconstitutionality.

But assuming that, at common law, and at the time of the passage of the act of 1851, it was the right of the complainant, when a bill holder demanded the redemption of a number of bills together, to redeem them separately, what wrong has been done to the complainant by the proviso complained of in the act of 1857? Does it deprive him of any right vested by the act of 1851, or does it confer any new right upon the bill holders? Clearly not. By the act of 1851, the banks to be organized under it were bound to redeem their bills in lawful money of the United States, when they were presented for redemption, and were subject to protest if they refused. The rights of the bill holders and the obligations of the banks remain the same. Upon the present assumption, the manner of enforcing the obligations which before existed is changed, and in a manner which makes it less onerous to the bank than the one supposed to exist before.

It is, doubtless, true, as contended by the complainant, that laws of the class to which the act of 1851 belongs, are not subject to repeal and modification by the legislature, as most general laws are. This distinction, however, as I apprehend, applies only to those who have acted under the law, and thereby acquired vested rights under it. So far the act becomes a contract between the State and the corporation, and like any other contract, can be enforced. But I have yet to see any authority which makes such a corporation *imperium in imperio*, and independent of and above the legislature of the State, so that it can claim a vested right in the mode of enforcing an obligation it has assumed.

Rights and obligations are sacred in the eye of the law, and are to be preserved and enforced, but the mode and manner is always subject to legislative control. It is not unusual for a legislature, at a single session, to change the whole remedial system of the State, but no one ever dreamed that those who

made contracts under the old system acquired a vested right to the old remedies.

Whenever the legislature attempts to deprive the banking corporations of rights which they are entitled to by a fair construction of the act of 1851, the cases cited in the able argument of complainant's counsel would be cheerfully adopted as a basis of decision. But in this case, where no right is invaded—no obligation is sought to be enforced which the complainant has not voluntarily assumed, I cannot concede, upon the ground of authority or reason, that a mere change in the remedy, if it is one, is an unconstitutional act of the legislature. On the other hand, under our constitution, every individual and corporation in the State is subject to the control of the legislature, so far as it relates to the mode of enforcing obligations, of whatever character or description they may be.

The traditional rule of the Medes and Persians has never been recognized as a principle of the common law, or adopted as a principle in State legislation. But, on the other hand, the practice, if not the rule, has obtained in most of the States, that no law or rule should long remain unchanged.

The distinction between a vested right, or the obligation of a contract, and the remedy given by law to enforce the right or obligation, has been uniformly recognized by the courts.

In the case of *Sturgis* v. *Crowninshield*, 4 Wheat. 122, the Supreme Court of the United States decided that it is competent for a legislature to pass limitation laws in relation to contracts then existing, and that it could abolish imprisonment for debt, depriving a creditor of the power of imprisoning his debtor in a case where he had the power when the contract was made. So, in the case of *Brown* v. *The Penobscot Bank*, 8 Mass., the Supreme Court decided that it was competent for the legislature to pass a law imposing damages, in the nature of penalties, upon banks previously chartered, for future neglect to redeem their bills in specie on demand—a case, in principle, exactly like the present.

But I may rest the decision of this question upon the authority of the case of the *Bank of the Republic* v. *The County of Hamilton*, 21 Ill. R. 53, before referred to. The principle upon which that decision rests, embraces this case, though it has a much wider range, and embraces a large class of provisions which cannot be said simply to affect the remedy. The principle stated and illustrated in that case, though perhaps new in its application, commends itself to my mind as sound and just, and the reasoning of the court is conclusive and unanswerable, leaving nothing to be desired by way of argument or illustration.

But it is insisted that the proviso to the third section of the act of February 14, 1857, amendatory of the banking law of 1851, applies only to the party presenting the bills, and not to the bank. The proviso [is in these words : *"Provided*, that in presenting notes or bills for payment under this section, the party presenting shall not be required to present or receive payment for each bill separately, but the whole amount presented shall be treated as though it were a single obligation of that amount."

The language is plain and explicit, and leaves no room for construction. It first provides, that a person presenting bills may present the whole amount together ; and secondly, that the whole amount, when so presented, shall be treated as a single obligation. Treated by whom? The person presenting has nothing to do after presenting the bills, and until then, the treatment does not commence, because the party presenting must make demand before the obligation to redeem accrues. If, then, the proviso does not apply to the bank, it has no force or meaning, and presenting the whole amount together effects *no object* unless the bank is bound to redeem all the bills as a single obligation. But the proviso says that the party presenting shall not be required to receive payment of each note separately. If so, the bank has no right to pay them in that manner, for it would be absurd to say that the party is not bound to receive the redemption of the bills separately, and that the banks had the right so to redeem. The right to demand and the obligation to redeem are necessarily reciprocal. The existence of the right to demand, pre-supposes the obligation to redeem. In what sense would a demand by the bill holder constitute a right, if no obligation was imposed upon the party of whom the demand was made ? And what kind of a demand would that be, which, though authorized by law, the party of whom it was made could satisfy by refusing to comply with it, or by doing some other act than the one required ?

*Decree affirmed.*