The Reapers' Bank, Appellant, *v.* Elisha W. Willard *et al.,* Appellees.

APPEAL FROM THE SUPERIOR COURT OF CHICAGO.

A bank has not the right, when its bills are presented for redemption, to delay and harass the bill holder by a dilatory way of counting out change for redemption.

The law, when it imposes an obligation, requires that it should be performed in a reasonable time, and in good faith.

The protest of a notary is not vitiated, by his statement of the facts as they transpired at the time of the protest.

A necessary statement or averment, well stated, is not weakened or affected by an unnecessary statement.

ON the 4th of January, A. D. 1860, a final decree was made in this case, " that the order enjoining the defendants and their agents, and allowing the decree heretofore entered in the above cause, be continued and made perpetual, upon the complainant's depositing in the office of Jesse K. Dubois, the auditor of state, the legal coin of the United States, for the redemption and payment of the circulating notes described in said bill of complaint, together with twelve per cent. interest per annum thereon, from the date of the protest thereof, and all costs and protest fees and expenses, within ten days from the entry of this decree, or if appeal shall be perfected in said cause, then within ten days from notice of the affirmation of such decree, by the Supreme Court of the State of Illinois, upon appeal, if the same shall be so affirmed ; and that on default of such payment, the complainant's bill be dismissed."

Appeal prayed and allowed.

The facts are stated in the opinion.

GALLUP & HITCHCOCK, for Appellant.

WALKER, VAN ARMAN & DEXTER, for Appellees.

CATON, C. J.  As in the preceding case, this decree is affirmed, for the reasons assigned in the Superior Court for the rendition of the decree, and we adopt the opinion of that court as the opinion of this court.

*Opinion of* C. J. WILSON, *of the Superior Court.*  The complainant is a banking corporation, organized under the general banking law of this State, passed in 1851.

The defendants, Willard and Adsit, were joint owners of packages of bills, amounting to $500, issued by complainant, and payable at complainant's bank, which were presented to the bank in a package, and redemption demanded, on the 12th of October, 1859, by a notary public, on behalf of said Willard and Adsit.

The president of the bank received the package when presented, and counted the bills, then separated one bill from the package, took a bag of dimes and half dimes, and deliberately counted out the amount of such bill, and handed the amount to the notary, and so proceeded redeeming in that manner, one bill

at a time, for several hours, and until 3 o'clock P. M., and then refused to redeem any more bills of the package on that day, even in that manner; and also refused to redeem in any other manner, although he had thus redeemed only $150 of the $500, and thereupon the notary protested the bills not redeemed, for non-payment.

On that day the notary informed the president of the bank that he should present for redemption, on the next day, another package of the bills of the bank, of the same amount.

On the next day, after 10 o'clock A. M., the notary presented another package of the bills of the bank, amounting to $500, and demanded payment.

The president proceeded to redeem the bills one by one, in the same manner as on the day previous, until 3 o'clock P. M., when he stated that the bank had closed, and refused further to redeem in that manner, or in any other mode. Whereupon the notary protested the bills of the package unredeemed, for non-payment.

The several protested bills were forwarded to the auditor of state, whereupon he gave notice to the president of the said bank to pay said notes, with interest and fees, as required by the statute; and complainant alleges that he believes the auditor is about to proceed to sell the stocks pledged by the bank, and call in the circulation of the bank, etc.

This statement is, in substance, the case made by the bill. A preliminary injunction was granted, to enable the defendants to bring all the facts before the court, if there should be any other facts not stated in the bill, necessary to a full investigation of this case, or should any facts stated in the bill be controverted.

Every question involving the rights of bankers and bill holders under the general banking law, is important, involving to some extent, as it does, the interest of corporations who have invested nearly $10,000,000, and the interests of the business men of this State, who are compelled to use, to a great extent, the issues of these corporations in the transaction of business.

The intention of the framers of the constitution, and of the legislature which passed the act of 1851, is very apparent, which was to obtain a currency easily convertible into money, and secure the bill holder from loss. The subject of banking was considered by the framers of the constitution as one of great importance and delicacy. Hence they took from the legislature the power of deciding what the law should be, until it had been submitted to the people for their approval or rejection.

The jealousy of the ordinary mode of legislation in relation to this subject, and which induced the constitutional convention to require such law to be submitted to the vote of the people,

is easily accounted for by referance to the history of former legislation, and its disastrous results, in this and other States. And the fact that a case like the present should be presented to a court, and the strong arm of a court of equity should be invoked to sustain the assumption of the complainant in this case, as legal rights entitled to protection, by injunction, is an example to show that the jealousy of the constitutional convention in relation to such corporations was not without reason.

What is the right which the complainant asks the aid of the court to protect, and which is about to be violated, as is alleged? It is simply this: The right to have its agent stand at its bank. counter, and when a bill holder presents a number of its bills for redemption, count out dimes and half dimes in the most dilatory manner, day after day, for the redemption of the bills, at the rate of $150 to $300 per day; and this court is asked, in short, to adjudge that a banker, when bills are presented for redemption, may stand at his counter, and under the pretense of complying with the law, adopt any and every device to delay and annoy the bill holder, if he does so under the pretense that he is redeeming.

The mode of redeeming, as it was called, in the present case, could have been adopted with no other object than to harass and annoy the bill holder, so as to deter him and others from presenting bills for redemption.

The law, when it imposes an obligation upon an individual or corporation, requires that it should be performed in a reasonable time, and in honesty and good faith. If there was no authority upon the question, we should have no hesitation, upon general principles, in deciding that the facts stated in this case amount in law to a refusal to redeem.

But several cases of a similar character have occurred, and been the subject of adjudication.

The case of the *Suffolk Bank* v. *Lincoln Bank*, 3 Mason, 1, is, substantially, like this : Bills of the Lincoln Bank were presented, and redemption demanded; the cashier proposed to redeem, and commenced counting out small silver coin, of the denomination of one-quarter of a dollar and less, and counted about $500 before the hour of closing the bank, the amount demanded being $3,000. Story, Judge, decided that such conduct amounted to a refusal, and that a protest for a refusal to redeem, was proper. "There is no pretense to say," the judge remarked, "that a bank has a right to delay the holder of bills, day after day, while its officers can count out change, so as to make up the amount in the smallest pieces of coin, in their own way. Every bank is bound to have its specie counted and weighed, ready for delivery," etc. *Hibbard* v. *Chenango*

*Bank,* 8 Cowen; 88; *Gilbert* v. *Nantucket Bank,* 2 Am. L. J. 107.

The case of *The People* v. *Dubois,* 18 Ill. R. 333, does not involve this question.  There was in that case nothing to show that small change was offered, or any act done by the bank for the purpose of vexation and delay, and the only question decided was, that the coinage of the United States, of all denominations, was a legal tender.  It by no means follows, because the coin tendered was a legal tender, that the bank had the right, by vexatiously prolonging the payment of a few hundred dollars, to keep a bill holder waiting day after day for his money.

But it is insisted by the complainant, that the notes were not properly protested, because the notary stated in his protest the facts as they transpired at the time they were presented.  It is a singular objection for the complainant to urge, because the protest would be sufficient, even if all he excepts to were stricken out.

The notary certifies, that he presented the notes, at the request of the owners, at the counter of the bank, at 10 o'clock A. M., to the president of the bank, stating the amount of the package, and demanded of the said president the redemption of said notes, and that the said president then and there refused to redeem.  He then proceeds to state what the president did, under the pretense of redeeming, as before stated, and concludes his certificate by stating, " whereupon, I, the said notary, at the request of the said Adsit and Willard, did protest, and by these presents do solemnly protest, etc., by reason of the non-redemption of said circulating notes so remaining unredeemed," etc. No rule is better settled than this.  A necessary statement or averment, well stated, is not weakened, or in any manner affected, by the statement of facts not necessary to be stated. The statement of the manner of the refusal, if improper, can only be regarded as surplusage.  Though, in my own judgment, there is no objection to stating the facts in this case, so that if protest is improperly made, the party for whose benefit the protest is made, may decide whether the protest was properly made or not, and proceed accordingly.  Clearly, it cannot vitiate a protest, otherwise properly made.

If the facts stated, show that the protest was properly made, a court of equity would not lend its aid to the party protested, to prevent the proper officer from doing what he was required by law to do, under such protest.

In the present case, the court is asked to enjoin the auditor from doing what the law requires him to do, in the case made by the bill.

It is said that the auditor is not a judicial officer, and has no right to determine whether the facts show a proper case for protest.

In the first place, no such duty devolves upon the auditor in this case, as already shown, because the protest is perfect after striking out the special facts stated.

But, were it otherwise, and the auditor had decided upon the facts stated, and decided that the protest was proper, and decided correctly, and proceeded to act as required by law in such cases, I am at a loss to know upon what ground a court of equity would enjoin him.

Admitting that the protest was proper, there remains no equitable ground of relief, so far as this case shows. There is no averment that the auditor is proceeding to do, or threatening to do, any act which he is not required by law to do, if the protest is properly made, and nothing but what, upon refusal, a court would compel him to do, by mandamus.

*Decree affirmed.*