## THE "DOVE."

1. The decree of a district court, dismissing a cross-libel for want of merit, from which no appeal was taken, determines the questions raised by such cross-libel, but does not dispose of the issues of law or of fact involved in the original suit.
2. By such dismissal, without appeal, both parties to the cross-libel are remitted to the pleadings in the original suit; and every issue therein is open on appeal as fully as if no cross-libel had ever been filed.

APPEAL from the Circuit Court of the United States for the Eastern District of Michigan.

The facts are stated in the opinion of the court.

*Mr. H. F. Canfield* and *Mr. D. B. Duffield* for the appellant.
*Mr. Ashley Pond* and *Mr. W. A. Moore, contra.*

MR. JUSTICE CLIFFORD delivered the opinion of the court.

Efforts, sometimes of a persistent character, are made in controversies of the kind, to establish a theory, which, if true, would

show that the respective vessels of the parties never collided, even when it is admitted that the collision did occur at the time and place alleged in the libel, and that the vessel of the complaining party became a total loss. Such efforts are useless, as it is hardly to be expected that the attention of the court, if accustomed to such investigations, can be diverted from the great inquiry in such a case, which of the parties, if either, is responsible for the loss occasioned by the disaster.

Compensation is claimed by the owners of the steamer "Dove" for damages received by the steamer in a collision, which occurred in St. Clair River, May 31, 1869, between the steamer and the propeller "Mayflower," about eleven o'clock in the evening of that day, in which the propeller struck the steamer on her port bow, and caused such injuries to the steamer, that her master found it necessary, in order to prevent her from sinking in deep water, to port her helm, and strand her on the Canada channel-bank of the river.

Process was served, and the owner of the propeller appeared and filed an answer. He also filed a cross-libel, in which he charged that the collision was occasioned by the fault of the steamer; and the owners of the steamer appeared and filed an answer to the cross-libel, denying the charge that the steamer was in fault, and reaffirming all the material allegations of the original libel.

Testimony was taken on both sides; and, the parties having been fully heard, the District Court entered a decree in favor of the owners of the steamer for the sum of $14,114.62, with interest and costs, as set forth in the decree, and dismissed the cross-libel with costs, at the same time the decretal order was entered in favor of the libellants in the original suit promoted by the owners of the steamer; from which decree dismissing the cross-libel no appeal was ever taken by either party.

Seasonable appeal to the Circuit Court was taken by the owner of the propeller from the decree of the District Court in the original suit, and further testimony was there taken before the final hearing. On the part of the propeller, the same views were maintained in the Circuit Court as those urged in the District Court; but the owners of the steamer submitted an additional proposition, to the effect, that, inasmuch as no

appeal had been taken·from the decree of the District Court in the cross-libel, the libellant in that suit was estopped to deny·. the ·charge in the answer to the cross-libel, that the collision was occasioned wholly by the fault of the propeller.

Both parties were again heard, and the Circuit Court affirme the decree of the District Court; and the respondent in the original suit appealed to this court. His principal propositions here are, that the collision occurred on the·Canada side of the river, and that the steamer was wholly in fault.

Opposed to the first proposition, it is insisted by the libellant that the collision took place on the American side of the river; that the propeller was wholly in fault; and that her owner is estopped to deny that allegation, because no appeal was taken from the decree of the District Court dismissing the·cross-libel.

Special reference is made in the argument to the case of *Ward* v. *Chamberlain*, 21 How. 554, as tending to support the proposition of estoppel; but the court here is of the opinion that nothing is found· in that case which has any such tendency. Two remarks will be sufficient to show that the inference drawn from that case is not well founded: (1.) That no cross-libel was filed in that case. Due process was issued in the original suit, and the respondents appeared and filed an answer, and the parties entered into an agreement that the answer in the primary suit should also be considered and operate as a libel in the cross-action. (2.) That in the case before the court there is a cross-libel, in regular form, in addition to the answer filed to the original libel, and that the libellant in the original libel appeared in the cross-suit and filed an answer.

Causes of the kind may be tried together or separately, as it is obvious that the pleadings in each are complete without any reference to the other. Nothing is required on the part of the respondent in the original suit beyond his answer, unless he claims that his vessel was injured, and that the collision was occasioned wholly by the fault of the vessel of the original libellant. For all purposes of defence to the charges made by the libellant, his answer, if in due form, is sufficient; but if he intends to claim a decree for the damages suffered by his own vessel, then he should file a cross-libel. Damages for injuries to his own vessel cannot be decreed to him under an answer to

the original libel, as the answer does not constitute a proper basis for such a decree in favor of the respondent. Consequently, whenever he desires to prefer such a claim, he should file an answer to the original libel, and institute a cross-action to recover the damage for the injuries sustained by his own vessel.

Controversies of the kind are usually tried together; and it appears that the two suits in this litigation were so tried in the District Court, and that the District Court came to the conclusion that the cross-suit was without merit, and dismissed the cross-libel; and, inasmuch as the libellant in that suit did not appeal from that decree, the suit is ended and determined. But the determination of that suit by such a decree did not determine the rights of the parties in the original suit: on the contrary, it left the issues in the latter suit just as they would have been had the cross-suit never been commenced.

Beyond doubt, the final decree dismissing the libel in the cross-suit determines that the libellant in that suit is not entitled to recover affirmative damages for any injuries suffered by his vessel in the collision; but it does not dispose of the issues of law or fact involved in the original suit. Instead of that, both parties in the cross-suit, if no appeal is taken from the decree in that suit, are remitted to the pleadings in the original suit; and it is undeniable that every issue in those pleadings is open to the parties, just the same as if no cross-libel had ever been filed.

Filed, as the cross-libel was, to enable the libellant in that suit to recover affirmative damages for the injuries received in the collision by his own vessel, which he could not recover under his answer in the original suit, the effect of the adverse decree, not appealed from, must be to preclude him from all such recovery in any subsequent judicial proceeding; but it was never heard that such a decree in a cross-libel impaired the right of the libellant, as the respondent in the original suit, to make good, if he can, every legal defence of law or fact set up and well pleaded in his answer to the original libel. Usually such suits are heard together, and are disposed of by one decree or by separate decrees entered at the same time; but a decision in the cross-suit adverse to the libellant, even if

the decree is entered before the original suit is heard, will not impair the right of the respondent in the original suit to avail himself of every legal and just defence to the charge there made which is regularly set up in the answer, for the plain reason that the adverse decree in the cross-suit does not dispose of the answer in the original suit.

Such a decree, if not appealed from, is conclusive that the libellant in the cross-suit is not entitled to recover affirmative damages for any injuries received by his own vessel; but it does not preclude him from showing in the original suit, if he can, that the collision was the result of inevitable accident, or that it was occasioned by the negligence of those in charge of the other vessel, or that it is a case of mutual fault, where the damages should be divided. *The Milan,* Lush. 398; Williams & Bruce Prac. 72, 254; *The Washington,* 5 Jur. 1067; *The Shannon,* 1 W. Rob. 463; *The Calypso,* Swab. 29; *The Navarro,* Olcott, 127; *Snow* v. *Carrutts,* 1 Sprague, 524; *Nichols* v. *Trimlet,* 1 id. 631; *North American,* Lush. 79.

Whether the controversy pending is a suit in equity or in admiralty, a cross-bill or libel is a bill or libel brought by a defendant in the suit against the plaintiff in the same suit or against other defendants in the original suit or against both, touching the matters in question in the original bill or libel. It is brought in the admiralty to obtain full and complete relief to all parties as to the matters charged in the original libel; and in equity the cross-bill is sometimes used to obtain a discovery of facts.

New and distinct matters, not included in the original bill or libel, should not be embraced in the cross-suit, as they cannot be properly examined in such a suit, for the reason that they constitute the proper subject-matter of a new original bill or libel. Matters auxiliary to the cause of action set forth in the original libel or bill may be included in the cross-suit, and no others, as the cross-suit is, in general, incidental to, and dependent upon, the original suit. *Ayers* v. *Carter,* 17 How. 595; *Field* v. *Schieffelin,* 7 Johns. Ch. 252; *Shields* v. *Barrow,* 17 How. 145.

Apply these rules to the case before the court, and it is clear that the whole merits of the controversy, under the pleadings in

the original suit, is open to both parties, the same as if the cross-suit had never been commenced.

Coming to the merits, the facts may be succinctly stated as follows: That the steamer, having passengers on board and a small cargo of general merchandise, was passing up the river, on the American side of the channel, on a trip from Detroit to Port Huron; and that the propeller, laden with a cargo of grain and flour, was coming down the river on the Canada side, bound on a voyage from Chicago to Buffalo. All agree that the night was somewhat dark, and that there was considerable fog, which sometimes lifted for a brief period, so that the banks of the river, one or both, could be seen, and then would settle down so that neither could be seen by those on board either vessel. Sufficient appears to show that the steamer was well manned and equipped; that she showed the proper signal-lights; and that she had competent lookouts properly stationed on the vessel, and that they were faithful and vigilant in the performance of their duty.

Nothing need be remarked respecting her trip up the river until she reached Marine City, where it appears she stopped fifteen or twenty minutes. When she started from there, it was the intention of her master to touch at Ricard's Dock; and, with that view, those who had charge of her navigation when she left the wharf at that landing laid her course due north for that place; and the evidence is full to the point that she pursued that course close to the American side of the channel until within a short distance — less than a quarter of a mile — of Ricard's Dock, when, it being suggested that the vessel touched bottom, she ported her helm, and was put upon a course of north by east, which still kept her close to the channel bank on the American side of the river; and it appears that she kept that course until the two vessels were so near together, that a collision was inevitable.

Throughout the whole period from the time she left the landing at Marine City, both before and after it was suggested that she touched bottom, the evidence is entirely satisfactory that she was proceeding slowly under check, constantly blowing two blasts of her whistle, once in two or three minutes, to signify that her course was on the American side of the channel.

Proof equally satisfactory is also exhibited in the record show-
ing that the blasts of her whistle were answered several times
by two blasts of the whistle from the descending propeller, to
signify that she was coming down the river on the Canada side
of the channel.

Much discussion took place at the bar as to the place of the
collision, it being insisted by the libellant that it was on the
American side of the channel, and by the respondent that it
was on the Canada side: but the evidence is so persuasive and
convincing that the theory of the libellants in that regard is
correct, that it would seem to be a work of supererogation to
reproduce it. Nor is it necessary, in any point of view, as a full
analysis of all the testimony on both sides is given by the dis-
trict judge in his opinion published in the record.

Before adverting to the circumstances attending the collision,
it becomes necessary to recur to the evidence, showing what
were the antecedent acts of the propeller. Many of the facts,
also, in respect to the propeller, are either conceded or so fully
proved as to render much discussion unnecessary. She was a
large vessel, with a full cargo, and was coming down the river at
full speed; and it is not doubted that she kept pretty close to
the Canada side of the channel until she got down opposite
Bowen's Dock, when it is clear from the evidence that she
ported her helm, intending to cross to the other side of the
river, and to touch at Marine City, where her master resided.
Just after she ported her helm, under the order of the mate, the
master came on deck; and the evidence is convincing that neither
the master nor the mate knew where the propeller was, and yet
she was kept on her course under a port helm, without any
diminution of her speed, until it was too late to adopt any
effectual precaution to prevent a collision.

Enough appears to show, beyond all doubt, that the master
intended to leave the Canada side of the river, and to stop at
Marine City; and it may be that the helm of the propeller was
put to port much earlier than was necessary for that purpose,
or that the propeller was more distant from the Canada shore
when the helm of the propeller was put to port than those
in charge of her deck supposed. Suppose that was so: still
it affords no defence for the propeller, as the evidence is

decisive that neither the master nor the mate knew whether the propeller was in the centre of the channel, or on the American or Canada side of the channel. Instead of that, the mate testifies in the most positive manner that no one could see the shore on either side, and that neither the master nor any one else could say whether a light which they saw was on one side or the other of the river.

Suffice it to say, the collision occurred; and the evidence shows beyond all doubt, in the judgment of the court, that it occurred on the American side of the channel. Attempt is made to controvert that proposition, chiefly upon three grounds : (1.) Because it appears that the propeller, when she answered the whistle of the steamer, was evidently on the Canada side of the river. (2.) Because the propeller struck the steamer on her port bow. (3.) Because the steamer sank on the Canada side of the channel of the river.

No doubt the propeller was on the Canada side of the channel until she ported her helm to pass over to the other side of the river preparatory to effect the intention of the master to touch at Marine City, where the master intended to stop. Equally satisfactory answer may be given to the other two objections taken to the theory of the libellants.

Persuasive proof having been introduced that the steamer was on the American side, it must be that the propeller crossed over to the American side before the steamer came up, and, being somewhat nearer to the American shore than the steamer, struck her as she came up half a point on her port bow; and the master of the steamer testifies that he immediately found that the steamer was in danger of sinking, and consequently put his helm hard to port, and headed the steamer towards the opposite shore, and that she stranded on the Canada channel-bank.

Beyond question, the effect of the blow when the collision occurred was to turn the stem of the steamer from the American shore out into the stream. Besides, it also appears that the stem of the steamer was so damaged by the collision that the vessel would not obey her helm against the current; which of itself, it may be, rendered it necessary for the master to change the course of the steamer. That he did so is fully

proved; and there is nothing in the record to show that a skilful mariner would have adopted any other course.

Examined in the light of these suggestions, it is clear, in the judgment of the court, that the collision occurred on the American side of the channel, and that the propeller was wholly in fault for the disaster. Both courts below concurred in that view; and this court finds no error in the record.

*Decree of the Circuit Court affirmed.*