EBERT and others *v.* THE SCHOONER REUBEN DOUD.

*(District Court, E. D. Wisconsin. July, 1880.)*

1. COLLISION—PLEADING—AFFIRMATIVE DAMAGES.—In a libel for collision the respondent cannot obtain a decree for damages in excess of those sustained by the libellant, unless he has filed a cross libel.

2. SAME—SAME—RECOUPMENT.—Where, however, such libel for collision has been filed, and the answer alleges injuries sustained, with an appropriate prayer for relief, the respondent has the right, without the filing of a cross-bill, to show damages by way of recoupment, in the reduction or extinguishment of the libellants' claim.

*George C. Markham,* for libellants.

*D. S. Wegg,* for respondent.

DYER, D. J.  A libel was heretofore filed in this court by libellants, as the owners of the schooner Arab, to recover damages sustained by that vessel in a collision with the schooner Reuben Doud, which occurred while the two vessels were lying at the port of Racine during a storm.  The libel charged the whole fault upon the respondent vessel.  An answer was interposed which controverted the material allegations of the libel, and set out a state of facts showing that the collision was occasioned wholly by the fault of the Arab.  There was also a general allegation in the answer that the Doud was injured in the collision, but the manner in which she was injured, and the particulars and extent of her injury, were not alleged.  No cross libel was filed in behalf of the Doud.

The case came to a hearing upon the proofs, and the court found both vessels in fault, ordered a division of the damages according to the practice in such cases, and the usual order of reference was made to a commissioner, who was directed to ascertain and report the damages.  It was not specifically stated in that order that the damages sustained by each vessel should be ascertained, and because of the general language of the order it has been a question with the commissioner and the parties litigant whether it was intended that proof should be taken showing the damage sustained by both vessels, or whether it should be limited to the damages sustained by the Arab.  Testimony was taken by the commissioner on

the part of libellants, and thereupon respondents also introduced testimony, but under objection, to show the damages sustained by the Doud. The question now arises whether, either under the order of reference which was made, or under any proper modification of that order, proofs can be taken and should be considered showing the damages sustained by the Doud; and herein is involved the inquiry, whether, in a case of collision, a respondent, having only answered the libel, and not having filed a cross libel for the recovery of affirmative damages, should be permitted, by way of recoupment, to reduce or extinguish the claim of the libellants. It is insisted by counsel for respondent that this may properly be done, while it is very earnestly contended, in behalf of libellants, that such a proceeding or course of practice ought not to be entertained in a case of collision; and it is further insisted that, if it is permissible, the practice of filing cross libels, hitherto prevailing in such cases, may well be entirely dispensed with. The question has not heretofore arisen in this court, and appears to be one of considerable interest.

It is well settled, in a series of adjudicated cases, that in actions *in rem* or *in personam,* in admiralty, which are founded upon contract, the respondent may avoid an obligation which his contract, in terms, imposes upon him, by showing that the contract has not been duly performed by the other party thereto, who seeks to enforce it; and that, by way of recoupment, the damages which have been sustained by a respondent in such case may be applied in reduction of the damages which the libellant would otherwise be entitled to recover.

The case of *Kennedy et al.* v. *Dodge et al.* 1 Ben. 311, is, perhaps, a leading case upon the question as thus presented. It was there held that, in a suit for freight money, the damages to the cargo could be recouped under an answer setting up the injury to the cargo as a defence, but that the respondents could not have an affirmative decree in their favor if their damages exceeded the freight. Judge Shipman says: "That the damages suffered by the respondents can be recouped from the freight money which the libellants would otherwise recover, appears to be settled by authority. By

way of recoupment, respondents can, as the damages arise out of the same transaction, extinguish a portion or all the claim of the libellants; but they can go no further. The court cannot pronounce in their favor for any sum in which their damages may exceed the amount of the libellants' demand." Id. 315. See, also, *Thatcher* v. *McCullough*, Olcott, 365; *Snow et al.* v. *Carruth et al.* 1 Sprague, 324; *Bearse* v. *Ropes et al.* Id. 331.

It was conceded, upon the argument in the present case, that such was the practice or rule in cases in admiralty arising upon the contract; but it was denied that the same principle or rule of practice can or ought to be, in reason or upon authority, applied in cases of collision where the right of action springs from a tort. Counsel for respondents cited the case of *Lucas* v. *Steamer Swann*, 1 Newberry, 158, where Judge Leavitt had occasion to consider what course ought to be taken in a case of collision, in which he determined that there was what is known as inscrutable fault. So far as the report of the case shows, the respondents filed no cross libel; they simply answered the original libel, alleged no injury to their own boat, but charged the entire fault upon the steamer, in whose behalf the libel had been filed. Finding that it was a case of inscrutable fault, the court decided that the damages should be divided. But it further appeared that the respondent vessel was not injured, or, at least, her injury was so slight that no claim was set up for remuneration. It was, therefore, a case where the entire damages were sustained by the vessel in whose behalf the libel was filed, and so a decree dividing the damages simply operated to reduce libellant's claim one-half. In the opinion of the court it is said: "It appears satisfactorily that the injury resulting from the collision fell almost exclusively on the Fern. The injury to the Swan is so slight, respondents have set up no claim to remuneration. The result, therefore, of the decree will be that one-half of the actual loss or injury sustained by the Fern must be paid by the respondents." From this statement of facts it is apparent that the case does not meet the question we have here.

The case of *The Dove*, 91 U. S. 381, was cited by counsel on both sides as an authority sustaining their respective positions; but, upon examination, I do not think the case covers the point here involved. That was a case of collision. The libel was filed in behalf of the schooner Dove against the propeller May Flower, in the district court for the eastern district of Michigan. It was held by that court that the propeller was wholly in fault, and therefore that the owners of the schooner were entitled to a full decree. A cross libel which had been filed in behalf of the propeller was dismissed, and an appeal was then taken to the circuit court, and that court affirmed the decree of the district court. The case was then appealed to the supreme court. In the circuit court the proposition was urged, in behalf of the Dove, that, inasmuch as no appeal had been taken from the decree of the district court dismissing the cross libel, the libellants in the cross suit were estopped to deny the charge in the answer to the cross libel that the collision was occasioned wholly by the fault of the propeller. In other words, the position was then taken by the libellants in the original libel that, as the respondents had submitted to the decree of the district court dismissing the cross libel, they were estopped to say that the collision was not occasioned by the fault of the propeller. And the question that was really involved in the appeal to the supreme court was whether the submission to the dismissal of the cross libel in the district court, by the parties who had filed it, prevented them from making the same defence to the original libel that they would have had the right to make if no cross libel had ever been filed. That was the principal question for judgment in the case, and was the question which was decided; and it was held that the decree of the district court dismissing the cross libel for want of merit, from which no appeal was taken, determined the questions raised by such cross libel, but did not dispose of the issue of law and fact involved in the original suit. It is true that, in the opinion of the court, it is stated that, "for all purposes of defence to the charges made by the libellant, his answer, if in due form, is sufficient; but if he intends to claim a decree for the damages

suffered by his own vessel, then he should file a cross libel. Damages for injuries to his own vessel cannot be decreed to him under an answer to the original libel, as the answer does not constitute a proper basis for such a decree in favor of the respondent; consequently, whenever he desires to prefer such a claim, he should file an answer to the original libel, and institute a cross-action to recover the damage for the injuries sustained by his own vessel." Id. 384. Further the opinion proceeds: "Beyond doubt, the final decree dismissing the libel in the cross suit determines that the libellant in that suit is not entitled to recover affirmative damages for any injuries suffered by his vessel in the collision, but it does not dispose of the issues of law or fact involved in the original suit." Id. 384.

The expression "affirmative damages" is several times used in the opinion in considering what was the *status* of respondent with reference to the original action after the cross libel had been dismissed, but I understand the court, in incidentally discussing the effect of filing a cross libel, to be speaking of a case where the party is seeking not simply to reduce or extinguish the damages which the libellant would be otherwise entitled to recover, but to recover affirmative damages; that is, damages which may be in excess of any amount which the libellant would be entitled to claim. As the court understood counsel upon the argument, no reason was urged why the principle of recoupment might not be recognized and applied in a case like the present, except that such application was wholly unsanctioned by authority. Herein I think counsel is mistaken. In my examination of the question I have come upon some cases, not referred to by counsel, which very closely bear upon the identical question here involved, and in the very aspect in which it is here presented.

In this connection the case of *The Seringapatam*, 3 Wm. Rob. 38, is worthy of attention. The facts of the case are stated by Dr. Lushington in the opinion of the court, and are as follows: "The question in this case arises under somewhat peculiar circumstances. Upon the first of May, 1846,

an action in the sum of £15,000 was entered on behalf of the owners of the Harriet against the Seringapatam, and upon the thirtieth of May a cross-action was brought by the owners of the Seringapatam in the sum of £550. An appearance was given in the action against the Seringapatam on behalf of the owners of that vessel; and the owners of the Harriet, being foreigners and residents abroad, and no appearance being given on their behalf in the cross-action, a motion was made by the proctor for the Seringapatam praying the court to stay proceedings until the owners of the Harriet should give bail to answer the action brought against them. The court, having directed the matter to stand over for consideration, finally rejected the application, but directed the owners of the Harriet to give security for the costs of the original action. In consequence of this decision the owners of the Seringapatam discontinued their proceedings as plaintiffs, and the cause was heard upon the original complaint of the owners of the Harriet, no admission being made on their part that the proceedings in the first case should govern or in any manner affect the subsequent action. When the case was heard the trinity masters were of the opinion that both vessels were to blame, in which case, if the two actions had been going on according to the ordinary usage and practice in these cases, the sentence of the court would have attached to both vessels, and the court would have decreed a joint reference to the registrar and merchants to ascertain the amount of the total damage, and would have directed the said damage, together with the costs, to be equally divided between the respective owners. The cross-action, however, as then stated, having been abandoned, the court made its decree pronouncing for a moiety of the damage done to the Harriet; and this decree has been affirmed upon appeal to the judicial committee of the privy council. Under this state of circumstances I am now asked to refer to the registrar and merchants the amount of damage sustained by the Seringapatam, for the purpose of ascertaining the whole amount of damage done to both vessels, and dividing the loss between them according to the usual practice in questions of this description."

Dr. Lushington then proceeded to notice certain objections which were raised against the course of proceeding sought to be pursued, one of which was that the court was precluded by the sentence of the privy council from making any alteration in the original decree; and, secondly, that the cross-action had not been prosecuted, and that there was no agreement on the part of the owners of the Harriet that the two actions should depend upon the decision which had been pronounced. Passing over what is said in relation to the first objection, the opinion proceeds: "The second objection that has been raised presents, I must confess, a much greater difficulty, and I do not exactly see how I can deal with the second suit," (by which is meant the cross-action which had been instituted in behalf of the Seringapatam,) "which has been abandoned as an existing suit, and say to the owners of the Seringapatam, 'you shall have the benefit of a decree,' which, in point of fact, has never been pronounced in their favor. The difficulty, it is true, is created by the peculiar circumstances of the case itself, and if I could have foreseen the result of the proceedings before the trinity masters, I would certainly have made some arrangements at the time to meet the circumstances of the case, for I never will be induced, unless compelled by law, to further the commission of an injustice towards either party upon a mere matter of form. Taking all the circumstances of the case into my consideration, the course which I shall adopt is this: I shall not depart from my original decree, but shall confine the refer. ence to the registrar and merchants to the amount of the compensation to which the owners of the Harriet are entitled. At the same time, I shall not permit the full amount of that compensation to be paid to them, unless they submit to the deduction of a moiety of the damages sustained by the owners of the Seringapatam."

It thus appears that, although, in view of the peculiar attitude of the case, Dr. Lushington refused to change the form of the original reference, or to depart from the original decree, he nevertheless required the owner of the Harriet to submit to the deduction of a moiety of the damages sustained

by the owners of the other vessel; and this, too, in a case where the cross-action had been abandoned, so that the case, at the time this final order was made, stood upon the pleadings as they were originally formed.

I refer next to the case of *The Sapphire*, 18 Wall. 51. This was a case where the emperor of France filed a libel in the district court of California against the ship Sapphire, alleging that a collision had occurred between that vessel and the Euryale, a vessel belonging to the French government, by which the latter was damaged. The libel charged the whole fault upon the respondent vessel. The owners of the Sapphire, in their answer, charged the fault upon the Euryale. No cross libel was filed. The answer, though denying any fault on the part of the Sapphire, and alleging that whatever damage was done was due wholly to the fault and negligence of the libellant's vessel, made no averment that any injury had been sustained by the Sapphire. Thus the case upon the pleadings was like that at bar. The case proceeded to a hearing, and there was an interlocutory decree in favor of libellant, a reference to a commissioner to ascertain and compute the damages, and a final decree in favor of libellant for $15,000. That decree was affirmed in the circuit court, and the case was then appealed to the supreme court. That court held both vessels in fault, and that the damages ought, therefore, to be equally divided, and sent down a mandate directing that a decree should be entered in the circuit court in conformity with such opinion. When the case reached the circuit court its previous decree was reversed, and it was decreed that the libellant recover against the Sapphire and her claimants the sum of $7,500, the same being one-half of the damages decreed in favor of the libellant and against the claimants. From that decree the owners of the Sapphire again appealed to the supreme court, alleging error in the proceedings of the circuit court, for the reason that the damages sustained by respondent were not taken into consideration. Upon that appeal Justice Strong, expressing the opinion of the court, says:

"The question now presented is whether the new decree

which the circuit court has made conforms to our mandate. Our mandate was not an order to take further proceedings in the case in conformity with the opinion of this court,  *  *  *  *  or to adjust the loss upon the principles stated in our opinion;  *  *  *  *  but it was specially to enter a decree in conformity with the opinion of this court. Of what damages did we order an equal division? There were no others asserted or claimed than those sustained by the libellant. We do not say that a cross libel is always necessary, in a case of collision, in order to enable claimants of an offending vessel to set off or recoup the damages sustained by such vessel if both be found in fault. It may, however, well be questioned whether it ought not to appear in the answer that there were such damages.  *  *  *  *  Without deciding that the claimants of the Sapphire were not at liberty to show that their ship was damaged by the collision, and to set off those damages against the damages of the libellant, it must still, we think, be held they have waived any such claim. If our mandate was not a direction to enter a decree for one-half the damages of the libellant; if its meaning was that a decree should be made dividing the aggregate of loss sustained by both vessels, which may be conceded,—it was the duty of the respondents to assert and to show that the Sapphire had been injured. This they made no attempt to do. When the cause went down, they neither asked to amend their pleadings, nor to offer further proofs, nor to have a new reference to a commissioner. So far as the record shows they set up no claim even then, or at any time before the final decree, that there were any other damages than those which the libellant had sustained." Id. 55–56.

The last decree of the circuit court was affirmed, and, as is evident, upon the ground that the claimants had not, after the return of the case to the circuit court subsequent to the first appeal, asserted or set up in proper form this claim for damages, and by omission so to do had waived such claim.

In this connection I refer to the case of *The Pennsylvania,* 12 Blatchf. 67. In this case the circuit court, affirming the decision of the district court, decreed in favor of libellants.

The supreme court, on appeal, (19 Wall. 125,) held that both vessels were guilty of fault which contributed to the collision. The claimants, not having alleged in their answer that they had sustained any damage by reason of the collision, on presentation of the mandate of the supreme court moved for leave to amend their answer in that particular. Judge Woodruff, in his opinion, says: "Upon the decision made in this cause by the supreme court it is altogether just that the damages sustained by the Pennsylvania should be brought into the apportionment which, by the rules of admiralty, follows when both vessels are guilty of fault which contributes to the disaster. I regard the opinion of the supreme court in the case of *The Sapphire*, 18 Wall. 51, as a plain recognition of the competency of this court to allow the owners of the Pennsylvania to bring their damages to the attention of the court, in this stage of the proceedings, with a view to including them in such apportionment. It is just that it should be so. The mandate directs proceedings here in conformity to the opinion. The opinion finds facts upon which the damages should be divided, [that is, that both vessels were in fault;] but the privilege now given should not disturb the proceedings in any other respect, nor work any disadvantage to the libellants beyond the ascertainment and allowance of those damages in the apportionment. On those terms and conditions let the answer be amended by an averment that the Pennsylvania was injured by the collision mentioned in the libel; and let an order of reference be entered to ascertain the amount of such damages. On the coming in and confirmation of the report, such damages will be brought into the apportionment with the damages already found to have been sustained by the libellants." Id. 68. This was a case like that of *The Sapphire*, in which no cross libel was filed.

Independent of authority, I discover no good and sound reason supporting the view taken of the question here involved by counsel for libellants. It is true that the present case is one of collision. The right of action, therefore, springs from a tort; but the claims of both parties also spring from one and the same transaction; and in considering the principle

upon which such a proceeding must rest, in an action brought to recover damages for breach of contract, and which must also be applied to a case like the present, if it can be made applicable at all, the distinction sought to be drawn between the two classes of cases is too insubstantial to be recognized. It is always the aim of a court of admiralty, as it is of a court of equity, so to deal with a controversy before it as to do justice between the parties to the extent that justice can be attained. Of course, there can be no dispute that, if the respondents were seeking to recover damages in excess of those sustained by the libellants, no decree for such affirmative damages could be granted, except upon a cross libel; but where all that is desired is to partially reduce or wholly extinguish libellant's claim, and to go no further, I can see no good reason why that may not be done by way of recoupment, under the issues formed by libel and answer, and without the intervention of a cross libel; and I am of opinion, and upon the strength of the cases cited I shall hold, that, although no cross libel has been filed in the case at bar, the respondents should have the right, under suitable allegations in their answer, to show the damages, if any, sustained by the Doud in this collision, and by way of recoupment to apply such damages in reduction of libellant's claim.

As is apparent from what is remarked by the supreme court in the case of *The Sapphire*, it is probably necessary that respondent's answer should allege the injuries which the Doud sustained, and that there should be an appropriate prayer for relief. The present answer is defective in that respect. I think it quite evident, from the opinion of the court in the case of *The Sapphire*, that even after that case went down from the supreme court it would not have been too late for the respondents in that case to have asked the court below for leave to amend their answer, and for such an order of reference as would have permitted an ascertainment of the damages sustained by both vessels. In the case at bar there has been an interlocutory decree adjudging both vessels in fault, and from the terms of the order of reference it may have been supposed that only the damages sustained by the Arab were to be taken into

consideration. The case has not yet come from the commissioner. The court has been given to understand that it is ready to come, provided the commissioner shall not be permitted to take into account, in his ascertainment of damages, the injuries sustained by the Doud. Following the practice pursued by Judge Woodruff, in the case of *The Pennsylvania*, *supra*, I am able to do what is conceived to be justice between the parties—that is, to allow the damages sustained by the Doud to be alleged in the answer, with an appropriate prayer that the same be applied in reduction or extinguishment of libellant's claim; that testimony be taken by both parties upon that branch of the case, and that the commissioner then make report as to the damages sustained by both vessels. This I shall permit to be done.