## THE TOM LYSLE.

## McDONALD v. THE TOM LYSLE.

*(District Court, W. D. Pennsylvania. December 28, 1891.*

1. PAYMENT ON ACCOUNT—APPLICATION TO ITEMS.
    When a payment is made upon account, without an application by either party to specific items, the law will apply it to the oldest items.

2. RIVER PILOTS—COMPENSATION—PLEADING—SET-OFF.
    On a libel by a pilot for wages, where the libelee merely files an answer, no affirmative judgment can be had for damages caused by the pilot's negligence; and, where the services are rendered under several distinct contracts, the right to set up such damages as a defense is confined to the wages earned under the particular contract during the performance of which the negligence occurred.

3. SAME—KNOWLEDGE AND SKILL.
    A river pilot is bound to be familiar with the channel of the river, and with the various obstructions to navigation, and to have the degree of skill ordinarily possessed by others of his class, and he is liable for damages occasioned by the want of such knowledge and skill, or by negligence in applying them, but not for damages occasioned by an error of judgment on his part.

4. SAME—NEGLIGENCE.

When a river pilot in charge of a tow adopts the proper course to avoid an imminent danger, he is not liable for damages caused by a failure of the boat to promptly obey her paddle-wheel, owing to an improper stowage of her fuel.

5. SAME—GETTING OUT OF CHANNEL.

A river pilot who gets far out of the channel, when one shore lighted by electric lights is in full view, is liable for damages resulting to his tow, even though the other shore is obscured by steam from the siphon pump.

In Admiralty. Libel by a river pilot for wages.

*George C. Wilson* and *David S. McCann*, for libelant. *P. C. Knox* and *E. W. Smith*, for claimants.

REED, J. The libelant's claim is for $185, being a balance alleged to be due him for services as pilot. He claims $25 for five days' service at Logstown in June, 1891, $10 for a trip to Industry in July, 1891, $100 for a trip to Louisville in July, 1891, and $90 for a second trip to Louisville in July and August, 1891, making a total of $225, and allows a credit of $40. The answer admits the correctness of the various charges, except the item of $25 for services at Logstown, but claims a further credit of $10. In my judgment, the testimony warrants the conclusion that the libelant's claim for the services at Logstown should be allowed. As to the credit, it appears that the firm of John A. Wood & Son, who are the owners of the boat, paid libelant $50 on general account. They owed him $10 for services, other than those in suit, and he applied that much of the payment, as he had a legal right to do, to the payment of the other claim, giving them credit for $40 upon the claim in question. This credit, in the absence of application by either the debtors or creditor, the law would apply to the oldest claims, so that it pays the Logstown claim and the Industry claim in full, and reduces the claim for trip to Louisville in July to $95, leaving that much of that claim and all of the claim for the second trip to Louisville unpaid. The respondents, however, in their answer, which they term an "answer and cross-libel," further defend upon the ground that, upon the second trip to Louisville, the tow, while in his charge as pilot, was twice injured, first at Deadman's island, where a barge containing coal was grounded and damaged, the respondents, as its owners, suffering a loss of $300, and again near Pomeroy, Ohio, where a boat containing coal was lost with its contents, the respondents suffering a loss thereby of $2,232.50; and these injuries, they claim, occurred through the negligence and carelessness of the libelant, and they seek to set off these damages against libelant's claim. As the case stands, this claim cannot be the subject of a set-off, so that the respondents could have a decree against the libelant for the balance, (*Ward v. Chamberlain*, 21 How. 572; *The Dove*, 91 U. S. 381;) but they may set up such acts of negligence by way of defense to the libelant's claim, the law implying, from the contract for service, faithful service on the part of the employe, and an amount of care and skill proportioned to the character of the work which he has engaged to perform, and, if he perform it negligently and unskillfully, it is a breach of contract, and

the loss sustained by the employer may be shown by way of defense, as going directly to the consideration. *Glennon v. Manufacturing Co.*, 140 Pa. St. 594, 21 Atl. Rep. 429. The general rule is thus stated in 2 Pars. Shipp. & Adm. 433:

"Admiralty has no jurisdiction of an independent set-off, and those usually allowed are where advances have been made upon the credit of the particular debt or demand for which the plaintiff sues, or which operate by way of diminished compensation for maritime services on account of imperfect performance, misconduct, or negligence, or as a restitution in value for damages sustained in consequence of gross violations of the contract. A loss arising from the gross neglect of a mariner may be set off in answer to a demand for wages."

But this set-off in this case would be only to the extent of the wages claimed. *The North Star*, 106 U. S. 17, 1 Sup. Ct. Rep. 41; *The Dove*, *supra; Ebert v. The Reuben Doud*, 3 Fed. Rep. 520; *Nichols v. Tremlett*, 1 Sprague, 361; *Snow v. Carruth*, Id. 324. And as each hiring in this case was upon a separate contract, the alleged negligence cannot be set up as a defense to any other than the wages claimed for the second trip to Louisville. *The Pioneer*, 1 Deady, 58. So that the libelant is, at all events, entitled to a decree for $95, the balance due, as stated above, for services prior to that trip. The question, then, remains whether the respondents have established their defense of negligence on the part of the libelant.

The duties of pilots are thus stated in *Atlee v. Packet Co.*, 21 Wall. 389:

"The character of the skill and knowledge required of a pilot in charge of a vessel on the rivers of the country is very different from that which enables a navigator to carry his vessel safely on the ocean. * * * The pilot of a river steamer, like the harbor pilot, is selected for his personal knowledge of the topography through which he steers his vessel. In the long course of a thousand miles in one of these rivers, he must be familiar with the appearance of the shore on each side of the river as he goes along. Its banks, towns, its landings, its houses and trees, and its openings between trees, are all land-marks by which he steers his vessel. The compass is of little use to him. He must know where the navigable channel is, in its relation to all these external objects, especially in the night. He must also be familiar with all dangers that are permanently located in the course of the river, as sand-bars, snags, sunken rocks or trees, or abandoned vessels or barges. All this he must know and remember and avoid. To do this he must be constantly informed of changes in the current of the river, of said bars newly made, of logs or snags or other objects newly presented, against which his vessel might be injured."

In *Campbell v. Williamson*, 1 Phila. 198, his responsibilities are thus stated:

"He should be a person of great and accurate knowledge of the difficulties and dangers of the particular navigation in which he is employed; well acquainted with the rules which arise out of the rights of others navigating the same waters, and always ready to regard those rights; cool and collected in dangerous and trying circumstances; not given to recklessness and passion in order to prove his courage; and always careful of the vessel committed to his guidance. * * * The legal liability of a pilot corresponds with the

high responsibility of his position. He is under obligation to his employers, as well as to third persons, to have and exercise proper care and skill in the navigation of the vessel. He is liable to his employers, and in collision cases to third persons, for any injury arising from his carelessness and unskillfulness. * * * Pilots are bound to exercise ordinary skill and care, according to the rules of navigation. But the care required, in the plain and ordinary course of navigation, is not the same as required in difficult circumstances. Circumstances of extraordinary danger require extraordinary care; and the fact that the pilot had to pass coal-boats in a somewhat narrow channel imposed upon him a degree of care different from what would have been required if he had had the channel to himself. Still this is but ordinary care, under the circumstances. Now, if the pilot exercised ordinary care and skill for the purpose of avoiding the collision, and yet failed in the attempt, he is not liable to his employers, though they have paid for the damage done by the collision. It is settled that, if the occupation be one requiring skill, the failure to exert that needful skill, either because it is not possessed or from inattention, is gross negligence." *The New World* v. *King*, 16 How. 469.

The general rule is stated in Cooley on Torts, 647, as follows:

"Every man who offers his services to another, and is employed, assumes to exercise in the employment such skill as he possesses with a reasonable degree of diligence. In all those employments where peculiar skill is requisite, if one offers his services, he is understood as holding himself out to the public as possessing the degree of skill commonly possessed by others in the same employment, and, if his pretentions are unfounded, he commits a species of fraud upon every man who employs him in reliance on his public profession. But no man, whether skilled or unskilled, undertakes that the task he assumes shall be performed successfully and without fault or error. He undertakes for good faith and integrity, but not for infallibity, and he is liable to his employer for negligence, bad faith, or dishonesty, but not for losses consequent upon mere error of judgment."

The distinction between an error of judgment and negligence is not easily determined. It would seem, however, that if one, assuming a responsibility as an expert, possesses a knowledge of the facts and circumstances connected with the duty he is about to perform, and, bringing to bear all his professed experience and skill, weighs those facts and circumstances, and decides upon a course of action which he faithfully attempts to carry out, then want of success, if due to such course of action, would be due to error of judgment, and not to negligence. But if he omits to inform himself as to the facts and circumstances, or does not possess the knowledge, experience, or skill which he professes, then a failure, if caused thereby, would be negligence. "No one can be charged with carelessness, when he does that which his judgment approves, or where he omits to do that of which he has no time to judge. Such act or omission, if faulty, may be called a mistake, but not carelessness." *Brown* v. *French*, 104 Pa. St. 604; *Williams* v. *Le Bar*, 141 Pa. St. 149, 21 Atl. Rep. 525. When a pilot in piloting a vessel has used his best skill and judgment, he is not liable for her loss, although the result shows that his best judgment was wrong. *Mason* v. *Ervine*, 27 Fed. Rep. 459.

The testimony shows that the passage at Deadman island is a difficult one, being through a narrow, winding channel, with a bar on the shore

side.    A steam-boat towing a fleet of barges or boats should, according to the judgment of the pilots examined, go through this channel by flanking; that is, by holding the boat back, with the fleet in a quartering position to the current, and allowing the current to sweep the head of the fleet around the curving channel, the wheel of the boat acting as a sort of pivot.    The testimony of Mr. McMichaels, the other pilot on the boat, shows that the libelant followed this course, but, the boat not being backed soon enough, the front barges were carried upon the bar, which was on the outside of the curve.    In other words, the boat was too near the bar before her fleet commenced to swing around. Mr. McMichaels says he called the libelant's attention to this, who said he was backing the boat all he could.    It would seem that the boat did not answer as quickly as usual, because her stern was too low in the water, and this is attributed to the fact that her load of fuel was smaller than usual, which threw her bow out of the water.    The libelant knew this fact.    If the boat had been stopped and backed too soon, the fleet would not have passed through in safety.    The libelant seems to have possessed the knowledge of the river and channel required in *Atlee* v. *Packet Co.*, *supra*.    He seems to have exercised his judgment, and to have tried faithfully to carry out the course upon which he had determined as the result of his judgment.    At most he committed an error of judgment for which he ought not to be liable.    But I think the libelant is responsible for the loss of the boat near Pomeroy.    Holding him to the responsibility, skill, and care required in *Atlee* v. *Packet Co.* and other cases I have cited, the testimony shows a want of care and skill on his part, for which he should be held liable.    The boat, with its tow, was out of its channel, with which he was bound to be familiar, and was almost on shore, before he discovered his whereabouts.    Granting, what is in dispute, that the steam from the siphon obscured his view of the West Virginia shore, the opposite or Ohio shore, lighted with electric lights, was in full view, and he has shown no excuse for being out of the channel, with that shore to guide him.    Even if the steam obscured his vision, and he found he could not steer intelligently, he should have stopped until the siphon was shut off.    As the boat sank in a few minutes after the tow rubbed the shore, and the testimony shows the end of the boat was crushed, it is fairly to be inferred that it received injuries at that time, which were the result of want of care and skill on the part of the libelant.    As the amount of the loss, on that occasion, far exceeds the amount of wages claimed for that trip, it follows that he cannot recover the sum of $90 claimed for that trip.    He is entitled to a decree for the remainder of his claim.