## HENDERSON v. KANAWHA DOCK CO.

### THE KEYSTONE STATE.

(Circuit Court of Appeals, Fourth Circuit.   February 7, 1911.)

No. 1,009.

1. MARITIME LIENS (§ 5*)—REPAIRS MADE ON AUTHORITY OF OWNER—VESSEL IN HOME PORT.

Where the owner actually authorizes repairs to be made on the credit of his ship, the person making them in a foreign port has a maritime lien therefor: and the fact that they were ordered by the master to be made in a foreign port while the vessel was still in her home port is immaterial.

[Ed. Note.—For other cases, see Maritime Liens, Cent. Dig. § 7; Dec Dig. § 5.*]

2. ADMIRALTY (§ 118*)—APPEAL—DECISIONS REVIEWABLE.

The ruling of a court of admiralty disallowing a claim filed against the proceeds of a vessel sold in a suit between other parties involves a separate issue, and is not reviewable, except on an appeal by the claimant.

[Ed. Note.—For other cases, see Admiralty, Dec. Dig. § 118.*]

Appeal from the District Court of the United States for the Southern District of West Virginia, at Charleston.

Suit in admiralty by the Kanawha Dock Company against the steamboat Keystone State. From an order of the District Court, James A. Henderson, receiver of the Pittsburgh & Cincinnati Packet Line, appeals. Affirmed.

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

W. R. Murphy (McIlvain & Murphy, on the brief), for appellant.
Rankin Wiley, for appellee.
Lowrie C. Barton, for the master.

Before PRITCHARD, Circuit Judge, and McDOWELL and ROSE, District Judges.

ROSE, District Judge. The appellee will be called the Dock Company. Pittsburg. Pa., was the home port of the steamboat Keystone State. The Dock Company, at its yards at Point Pleasant, W. Va., repaired that vessel. Its bill was not paid. It filed its libel in rem. The steamboat was sold by the marshal. The proceeds were brought into court. The appellant had a purchase-money mortgage on the boat. He will be spoken of as the mortgagee. The fund in the registry is not large enough to pay both his mortgage and the Dock Company's bill. The question to be decided is which shall be paid.

[1] The evidence shows that the repairs were necessary. For want of them a certificate of inspection had been refused. Until they were made the vessel could not earn a dollar or be put to any useful purpose. The work was done upon the credit of the ship. It was admittedly done by order of the master. The mortgagee says that nevertheless the Dock Company never acquired a maritime line. His contention is that the Keystone State was in Pittsburg, its home port, when the master agreed with the Dock Company to bring it to Point Pleasant for repair. He says that the implied power of the master to bind the ship in a foreign port is limited to the cost of fitting her out, so that she may continue the voyage upon which she was when the necessity arose, or so that she may be enabled to reach her home port. He argues that, without the authority of the owner, the master may not take the ship from its home to a foreign port for the sole purpose of having it there repaired or refitted. Perhaps not. But in this case the special commissioner below found that it "conclusively" appeared that the repairs were made at the instance of the master and owner. His report was confirmed by the court. The evidence in the record leaves no room for doubt that the commissioner was right.

When the owner actually authorizes the repairs to be made upon the credit of the ship, it is no longer necessary to rely upon the implied authority of the master. An owner may in person or by an agent order necessaries for a ship in a foreign port. The person who furnishes them upon such an order has a maritime lien for their price, provided that they are furnished upon the credit of the ship. The Kalorama, 10 Wall. 204, 19 L. Ed. 941. Such a lien takes precedence over a prior purchase-money mortgage. The J. E. Rumbell, 148 U. S. 1, 13 Sup. Ct. 498, 37 L. Ed. 345. It follows that the court below was right in decreeing that the bill of the Dock Company should be paid in full before the mortgagee was entitled to anything.

[2] One other matter remains to be disposed of. J. B. Demere filed a claim below for $1,350 for wages as master. The special commissioner disallowed this claim on the ground that the master has no lien in rem for his wages. Demere did not except to the report. He did not appeal from the decree confirming it. He now files a brief

asking that this court decree that under the law of Pennsylvania he has a maritime lien on the fund for three months' wages at $150 a month. He says that the fact that he did not except to the special commissioner's report or appeal from the order of the court below is immaterial. He argues that the appeal of the mortgagee brings the whole case up to be here heard and decided de novo. He relies upon Irvine v. The Hesper, 122 U. S. 256, 7 Sup. Ct. 1177, 30 L. Ed. 1175; The San Rafael, 141 Fed. 270, 72 C. C. A. 388; Munson S. S. Line v. Miramar S. S. Co., 167 Fed. 960, 93 C. C. A. 360.

Those authorities have no reference to such a case as his. It is in effect ruled by The Dove, 91 U. S. 384, 23 L. Ed. 354. There the Supreme Court held that an appeal from a decree passed upon a libel did not bring up for review a decree dismissing a cross-libel, when the latter decree had not been appealed from. Mr. Justice Clifford pointed out that the appeal brought up all the issues raised by the libel, so that they could be tried anew. The libelant might be awarded more or less than he had been given below, or his libel might be dismissed altogether. Affirmative relief, however, could not be given the respondent, because there was no case asking for it before the court. The libel and the cross-libel were separate proceedings. They are usually consolidated for purposes of convenience, but they are logically distinct. In this case the claim of the master raised a distinctly separate issue; having nothing whatever to do with the controversy between the appellant and the appellee. It is the dispute between them which the appellant's appeal may require us to try de novo. It brings up no other controversies. The John and Winthrop (C. C. A.) 182 Fed. 380.

The decree below was right, and is affirmed.