MEYER et al. v. PACIFIC MAIL STEAMSHIP CO.

(District Court, N. D. California. December 6, 1893.)

No. 10,316.

ADMIRALTY—EQUITABLE DEFENSES—REFORMATION OF CONTRACTS.

Admiralty cannot take cognizance of a defense based on mutual mistake, requiring the reformation of a maritime contract sued on; but the setting up of such defense does not oust the jurisdiction. On the contrary, the defense will merely be considered as irrelevant, and subject to exception.

In Admiralty. Libel in personam to recover damages for failure to carry and deliver freight in accordance with terms of bill of lading. Answer sets up mutual mistake in the terms of the bill of lading. Exceptions to answer. Sustained.

Andros & Frank, for libelants.

Ward McAllister, Jr., for respondent.

MORROW, District Judge. The libel alleges that on the 22d day of May, 1891, E. L. G. Steele & Co., of San Francisco, delivered to the Pacific Mail Steamship Company, at the port of San Francisco, state of California, 2,200 gunnies of wheat and 5,000 gunnies of corn, in good order and well-conditioned, to be carried and transported upon the steamer San Blas, or any of said company's steamers, or steamers employed by them, then lying in the port of San Francisco, and bound for Panama, unto the port of Champerico, in the republic of Guatemala, and there delivered in good order to the libelants, who were then and there the owners thereof, for the freight of $3,726.88, to be paid by the said libelants; the said E.

L. G. Steele & Co. receiving therefor from the said Pacific Mail Steamship Company a bill of lading and contract of affreightment, which is annexed to the libel.

It is further, alleged that, although the said freight was prepaid upon said merchandise, the said Pacific Mail Steamship Company did not carry all of said merchandise upon said steamer San Blas, or upon any of said company's steamers, or upon any steamer employed by them, then lying in the port of San Francisco; but, on the contrary, in violation of their said contract of affreightment, only carried a part of said merchandise upon said steamer San Blas, leaving behind 250 gunnies of wheat and 1,433 gunnies of corn, which said merchandise was not shipped or carried forward as in said bill of lading or contract of affreightment specified, but was delayed and carried forward by a steamer not in the port of San Francisco on said 22d day of May, 1891, but which arrived subsequently thereto, whereby the libelants lost the market for which said merchandise was destined, to their damage in the sum of $692.30 in United States gold coin.

The answer of the respondents admits the delivery of the bill of lading, but alleges, among other things, that it was made and delivered by the mutual mistake of respondent and E. L. G. Steele & Co.; that it was the mutual intent and meaning of the respondent and E. L. G. Steele & Co. that no less than 300 tons of the corn and wheat should be carried and transported to the port of Champerico on the respondent's steamer San Blas, and that the balance of the corn and wheat should be carried and transported to the port of Champerico by the respondent's steamer then advertised to sail on June 3, 1891, and it should have been so stated in the contract of affreightment, and it was the mutual intention of the parties to the contract of affreightment that the bill of lading and contract of affreightment made and delivered to E. L. G. Steele & Co. by the respondent should fully express the contract made, but, through inadvertance and by mutual mistake of the parties thereto, the bill of lading and contract of affreightment were made and delivered as alleged in the libel, and failed to state the contract entered into between the parties thereto, and the bill of lading and contract of affreightment should be corrected so as to state the true contract made between the parties.

The libelants except to the answer on the grounds that it does not state facts sufficient to constitute a defense, and that it sets up an agreement on a contract of affreightment not contained in the provisions of the bill of lading, and inconsistent with and contrary thereto, in which particular the libelants insist that the respondent's answer is irrelevant and immaterial.

The portion of the respondent's answer excepted to by the libelants sets up an equitable defense, based upon the mutual mistake of the parties. A court of admiralty exercises its jurisdiction upon equitable principles, but it has not the characteristic powers of a court of equity. It cannot entertain a bill or libel for specific performance, or to correct a mistake. The Eclipse, 135 U. S. 599--608,

10 Sup. Ct. 873. It has jurisdiction over maritime contracts when executed, but not over contracts leading to the execution of maritime contracts. Andrews v. Insurance Co., 3 Mason, 6–16. This principle of admiralty jurisdiction is not controverted by counsel for respondent, but he contends, as the court has jurisdiction of the action, it must determine the case upon the equity involved in the defense, or dismiss the libel without prejudice, that the party may bring his suit in a forum which would have jurisdiction to settle the matter upon the issues raised by the pleadings. When the original libel brought in a court of admiralty seeks to reform a maritime contract, it is the practice to dismiss the libel for want of jurisdiction over that particular action. Andrews v. Insurance Co., supra; Williams v. Insurance Co., 56 Fed. 159. But in this case the court has jurisdiction over the cause of action, as stated in the libel, and no case has been cited where the libel has been dismissed because the answer sets up an equitable defense. Reference to the numerous cases in which the scope and character of admiralty jurisdiction has been discussed would be out of place here. It is sufficient to say that the jurisdiction of United States courts in admiralty over maritime contracts has been established in the most explicit and comprehensive terms, and, while the precise question raised in this case does not appear to have been determined by the courts, nevertheless there are certain general principles of jurisdiction which warrant the conclusion that a court of admiralty is not ousted of its jurisdiction over a cause of action based upon a maritime contract, because one of the parties to the contract contends it should be reformed. If we admit this defense in an action in personam, we must admit it in an action in rem, and the result will be to withdraw the admiralty jurisdiction and its remedies from such contracts upon the mere allegation of an answer that there is an equitable defense. This practice would, in my judgment, be wholly inadmissible.

The remaining question is as to the relevancy or materiality of the matter set up in the answer as a defense to the action on the bill of lading. In the case of The Delaware, 14 Wall. 579, the Oregon Iron Company shipped iron on board the bark Delaware at Portland, Or., to be carried to San Francisco. The iron was not delivered, and on a libel filed by the iron company the defense set up by the owner of the vessel was that by a verbal agreement between the parties the iron was stowed on deck, and that the whole of it, except a small quantity, had been jettisoned in a storm. On the trial the owner offered proof of this parol agreement, but the libelant objected to the evidence as repugnant to the contract set forth in the bill of lading, and the decree was for the libelant, which was equivalent to a decree that the evidence offered was incompetent. The respondent contends that this case has no application to the question now under consideration because the claim made for equitable relief had not been raised by the pleadings. Admitting this to be so, nevertheless the supreme court has here declared a rule with respect to such a transaction as the one at bar

that excludes the evidence of a verbal agreement, and under this authority I am of the opinion that the evidence is irrelevant and immaterial. It follows that the exception should be sustained, and it is so ordered.