DAVIDSON v. GREEN et al.

(District Court, W. D. New York. January 25, 1904.)

No. 7.

1. ADMIRALTY—SUIT FOR MARITIME SERVICES—COUNTERCLAIM.

In admiralty, a set-off or counterclaim for damages cannot be considered, to reduce a claim for maritime services, unless the damages upon which it is based arose out of the same transaction.

2. SAME—SUIT FOR REPAIRS TO VESSEL—SET-OFF.

A written contract for repairing a vessel enumerated many items of work to be done and materials furnished, and fixed the price to be paid therefor, and at the end provided that the enumerated details were simply an outline, and that the contractor was to do "a proper and suitable job to put the vessel in first-class shape." *Held*, that all repairs made by the contractor, and which were necessary to put the vessel in good condition, whether specified, or made pursuant to a subsequent oral agreement, but in connection with those specified, were within the written contract, and that in a suit to recover for extra repairs, not specified therein, the owner could set off claims for damages arising from the failure of the contractor to complete the specified work in the manner required by the contract.

In Admiralty. Suit in personam to recover for repairs.

Clinton & Clinton (George Clinton, Jr., of counsel), for libelant.

Clinton & Thomas (Spencer Clinton, of counsel), for respondents.

HAZEL, District Judge. This proceeding has been brought in personam to recover from her owners the sum of $1,929.83 for repairs and materials furnished to the excursion steamer Pearl at Bay City, Mich., between April 28 and July 1, 1898. Evidence was offered by the respondents, and was admitted, to prove that on April 22, 1898, an agreement in writing was entered into between libelant and Joseph H. Rebstock and John Johnson, acting for the owners, to so rebuild the Pearl as to make her stanch, seaworthy, and fit for navigation. The character of the repairs is set forth in detail. The specifications enumerate many specific items of work and labor to be performed, and material to be furnished, to fulfill the contract, and to enable the Pearl to pass government inspection as a passenger steamer. The contract price agreed upon was $6,000, payable in installments within one year from July 1, 1898. The full amount was eventually paid, the last installment having been received more than a year after the date of the agreement. At the end of the agreement was a provision that the enumerated details of repair work for the vessel, and the materials to be furnished, were simply an outline thereof, and that the libelant was to perform "a proper and suitable job to put the vessel in first-class shape." The libelant seeks to recover for extra repairs and material furnished, not for any of the work specified in the paper writing. The amended answer of the respondents refers to the written memorandum, and alleges that the libelant did not render the services therein enumerated in a workmanlike manner. This caused additional expendi-

¶ 1. See Admiralty, vol. 1, Cent. Dig. §§ 327, 330.

ture by respondents to complete the repairs included in and required by the agreement. It is also alleged in the answer, and the proofs support the allegation, that, under the original contract, subsequent to making the repairs at Bay City, a parol arrangement was entered into between the parties for other repairs at further expense to the respondents. These were made upon the vessel at Buffalo, N. Y., her port of hail. The answer further alleges excessive charges for certain labor and materials concededly ordered by respondents under the parol arrangement, and libelant's wrongful conversion of the Pearl's capstan or windlass, valued at $250. Upon argument, respondents' counsel concedes that no affirmative judgment can be awarded, but insists that the damages sustained as a result of libelant's failure to perform the services included in the agreement in a proper, workmanlike manner may be recouped to the extent of diminishing or extinguishing libelant's claims. It is well settled in admiralty that an independent set-off or counterclaim cannot be considered to reduce or diminish a claim for maritime services unless the damages upon which the set-off or recoupment is directed arise out of the same transaction. Ebert v. The Schooner Reuben Dowd (D. C.) 3 Fed. 520; The Zouave (D. C.) 29 Fed. 298; The Frank Gilmore (D. C.) 73 Fed. 686; American Steel Barge Co. v. Chesapeake & O. C. A. Co., 116 Fed. 857, 54 C. C. A. 207; Kennedy v. Dodge, Fed. Cas. No. 7,701; 2 Pars. Ship. and Admy. 433.

Accordingly the first point to be decided is whether the damages claimed to have been sustained by the owners of the Pearl in consequence of libelant's failure to perform the agreement of April 22d may be recouped where the libel filed seeks to recover compensation for extra services and materials furnished, and which were not expressly included in the terms of the written document. The libelant contends that the doctrine of set-off and recoupment cannot be applied, for the reason that recovery is demanded upon an independent claim, and having no connection with the original arrangement to repair the vessel. The evidence, however, does not support this contention. The memorandum under which much of the work upon the vessel was performed expressly states that the variety of items of labor therein specified was only an outline of what the parties contemplated as actually necessary to be done. The written agreement imports the obvious intention for additional repairs to be made, other than such as were therein specifically stated. The extra repairs referred to in the libel were practically performed simultaneously with the repairs included in the original contract, and the entire work must be regarded as having been done pursuant to a written agreement, and an oral arrangement subsequent thereto, but which is contemplated by the written agreement itself, and which, with the writing, constitutes a single contract between the parties. For this reason, I am of the opinion that the recoupment pleaded is not in the nature of an independent set-off. The cases cited by proctor for libelant do not appear to be authorities for holding that damages sustained may not be recouped to reduce a claim in such a case as this. Stress is laid upon The Zouave, supra, which is clearly distinguishable. There the contract was dated in September, 1883, and was in relation to a boiler which was put into the tug about one year afterwards. The boiler was accepted after thorough

inspection and examination, and paid for. Subsequently, in March, 1885, and thereafter at intervals, other repairs having no connection with the original contract were made by the libelant upon the tug. The cross-libelant charged that the boiler was improperly constructed, and sought to recoup damages arising from a breach of contract to furnish the tug with a suitable boiler. This the court correctly held was another and earlier transaction, having no relation to the one in controversy. In the case at bar the repair work was done under the writing of April 22d. The extra repairs were being made practically at the same time, and before the delivery of the vessel to the owners, and under the oral agreement, which has been construed as simply a part of one final and comprehensive agreement, covering the entire work. The written agreement required libelant "to move seats in the fore end of cabin to abreast of the paddle boxes"; also "to construct a new hurricane deck the entire width and length of the steamer; said hurricane deck to be supported with turned oak stanchions of sufficient number and size and rolling rods, if necessary." It obliges the libelant to "put the gallows frame in condition to pass inspection"; to supply fender covering part of the promenade deck rim, also rail above said rim and fill with wire or rope netting between the rim and rail." The agreement contains provisions to repair outside of paddle boxes, and cover the top thereof. The hurricane deck was to have been provided with a hand rail and seats. The evidence of the respondents shows that, soon after the delivery of the vessel at Buffalo, the attention of libelant was directed to his failure to comply with the terms of the agreement in respect to the details specified. The testimony of Mr. Hickman and Mr. Rebstock on this point shows that Capt. Davidson, the libelant, by implication, at least, acknowledged that the services rendered were incomplete in certain particulars, which were indicated, and that libelant replied, in substance, that respondents could fix these things up, and he would pay the bills. Consideration of all the evidence leads to the conclusion that a reasonable deduction must be made on account of the expense incurred by the owners of the Pearl for additional repairs made by them, and which, in my judgment, the evidence shows libelant was obliged to perform under the contract, as finally settled between the parties. Subsequent to the delivery of the vessel, and while she was in service, it was further ascertained that the gallows frame had not been sufficiently strengthened. The evidence shows that the only repairs made upon the gallows frame consisted of hewing out a portion of the decayed timber, and putting in the cavity a dutchman or block to cover the opening, which in turn was covered by an iron plate. These repairs to the gallows frame were not a sufficient compliance with the intention of the contracting parties. The iron sheet covering appears not to have given sufficient and lasting strength, owing to decayed timber to which the iron plates were attached. The evidence of the libelant is to the effect that he was merely required to do a good job of patching, which would last a year or two. There is satisfactory evidence that more durable repairs were contemplated and paid for by respondents. The evidence shows that respondents were put to loss and expense on account of libelant's failure to make proper and suitable repairs as specified in that portion of the

contract reduced to writing, and accordingly I allow the following sums as an offset to libelant's claim: Additional repairs to gallows frame, $150; seats on promenade deck, $150; rolling rods, $20; netting, $125; repairs to main deck, $150; replacing seven knees, $35; work done on paddle boxes, $75; seats and rail around the hurricane deck, $150; battening under guard rim, $75; amounting in all to $930. The prices allowed in reduction are considerably less than the evidence establishes as the value of the additional repairs actually made upon the Pearl by her owners since she was repaired by libelant. But, considering that the Pearl is quite old, and has been in use for a number of years as an excursion steamer, and in the absence of a more specific contract to repair, all the damages which respondents claim to have sustained will not be allowed. Equitably, it is clearly established that reasonable set-off should prevail against libelant's claim for extra repairing, and I have therefore fixed the basis of damages and the amount with a view of a fair adjustment of the controversy between the parties. Evidence of the respondents does not substantiate the claim of exorbitant prices charged for outfitting and for general repairs made upon the Pearl; neither does the evidence justify making the deduction claimed for loss or conversion of the vessel's capstan or windlass. Whether the capstan or windlass had any value, other than for old iron, has not been proved, and, therefore, in the absence of such evidence of value, no allowance will be made.

Decree may accordingly be entered for libelant for $1,929.83, with costs, less the sum of $930, which sum may be applied in reduction of libelant's damages.