UNITED TRANSPORTATION & LIGHTERAGE CO. v. NEW YORK & BALTIMORE TRANSP. LINE.

NEW YORK & BALTIMORE TRANSP. LINE v. UNITED TRANSPORTATION & LIGHTERAGE CO.

(Circuit Court of Appeals, Second Circuit. February 14, 1911.)

Nos. 143, 144.

1. ADMIRALTY (§ 36*)—COUNTERCLAIM—CLAIM "ARISING OUT OF SAME CAUSE OF ACTION."

In a suit in admiralty to recover for lighterage services rendered under a contract with respondent corporation, a claim by respondent for damages, based on alleged excessive charges paid libelant by respondent under a prior contract between them, made on behalf of respondent by a former officer who was also interested in libelant company, is not one "arising out of the same cause of action for which the original libel was filed," and cannot be set up as a counterclaim under the fifty-third admiralty rule.

[Ed. Note.—For other cases, see Admiralty, Dec. Dig. § 36.*

For other definitions, see Words and Phrases, vol. 1, pp. 492–496; vol. 8, p. 7581.]

2. ADMIRALTY (§ 10*)—JURISDICTION—MATTERS OF EQUITABLE COGNIZANCE.

A cause of action to obtain relief against a fraudulent contract between two corporations, made by an officer common to both, is not maritime in its nature and cannot be brought by either an original or cross libel within the jurisdiction of a court of admiralty, although the contract itself was maritime.

[Ed. Note.—For other cases, see Admiralty, Dec. Dig. § 10.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Appeals from the District Court of the United States for the Southern District of New York.

Suit in admiralty by the United Transportation & Lighterage Company against the New York & Baltimore Transportation Line, and cross-libel by respondent against libelant. Decrees for libelant and dismissing the cross-libel (180 Fed. 902), and respondent appeals. Affirmed.

The libel was filed to recover for certain lighterage services rendered between May 1, 1908, and May 12, 1909. The respondent answered and also filed a cross-libel claiming to recover by way of counterclaim $14,863.32 alleged to have been paid upon excessive charges for lighterage services rendered prior to the rendition of the services stated in the libel.

The ground for claiming to recover these alleged excessive payments was that one Groves, who participated in making the contracts providing for the excessive charges for lighterage services, was, at the time, president and a director of the libelant corporation and also general manager and a director of the respondent corporation.

The lighterage services to recover which the original libel was filed were rendered by the same vessels as before, but under an agreement made with an officer of the respondent corporation after said Groves ceased to be its general manager and were not subject to the objection above stated.

Upon the trial concessions were made fixing the amount due the libelant under the original libel at $5,969.97, and a decree was entered for that amount with interest and costs. The cross-libel was, however, dismissed. The respondent has appealed.

Keener & Lewis (A. Delos Kneeland and William A. Keener, of counsel), for appellant.

Hunt, Hill & Betts (F. S. Laws and Geo. Whitefield Betts, Jr., of counsel), for appellee.

Before LACOMBE, COXE, and NOYES, Circuit Judges.

NOYES, Circuit Judge (after stating the facts as above). The amount due the libelant under the original libel was not disputed, and the matters set up in the cross-libel do not constitute matters of defense thereto except as they may serve to diminish the amount recoverable if established as an affirmative demand in favor of the respondent.

At the outset the libelant contends that the District Court had no power to entertain this affirmative demand and grant the respondent the relief prayed for in its cross-libel, because:

(1) The relief sought is not based upon the same cause of action as the contract which is made the basis of the libelant's claim.

(2) The relief sought is outside the jurisdiction of a court of admiralty.

The fifty-third rule in admiralty, under which the respondent claims the right to file its cross-bill, is printed in the footnote.[1]

A cross-libel may be filed "upon any counterclaim arising out of the same cause of action for which the original libel was filed."

[1] "Whenever a cross-libel is filed upon any counterclaim arising out of the same cause of action for which the original libel was filed, the respondent in the cross-libel shall give security in the usual amount and form, to respond in damages as claimed in said cross-libel, unless the court on cause shown, shall otherwise direct; and all proceedings upon the original libel shall be stayed until such security shall be given."

Undoubtedly, as the respondent says, this rule should be liberally construed. The interpretation given to the words "same cause of action" by Judge Brown in Vianello v. Credit Lyonnais (D. C.) 15 Fed. 637, seems most proper:

"I am satisfied that the words the 'same cause of action' are here used in a more general sense, meaning the same transaction, dispute, or subject-matter which has been the cause of the action being brought."

See, also, Genthner v. Wiley (D. C.) 85 Fed. 797; The Highland Light (D. C.) 88 Fed. 296.

The first inquiry then is whether the demand set up in the cross-libel grows out of the same subject-matter as the contract upon which the original libel is based.

As shown in the statement of facts, the contract for the unpaid lighterage services (the subject-matter of the libel) was entered into after said Groves ceased to be general manager of the respondent, and is not subject to the objection that he was a common officer of both contracting corporations. It is true that this contract related to the same vessels which he had previously hired, and that the services were of the same nature, but the terms were different, and the later contract was in law a new one. As well said by the district judge:

"It does not advance matters to speak of this conversation as a modification of an existing contract. A contract once made cannot be modified except by a new meeting of minds, and when such mind-meeting occurs a new contract springs into existence."

The respondent's demand in its cross-libel has wholly to do with the earlier contract. It is based upon the theory that this contract was voidable because Groves, was an officer of both contracting corporations, and was so unreasonable and unfair as to be practically fraudulent.

Contracts between corporations having common officers are closely scrutinized by the courts. There is always the possibility of a conflict between interest and duty. But such contracts are not necessarily void, nor are they constructively fraudulent. If, however, there be actual fraud, or if undue advantage be taken in favor of one party over the other, the courts will grant relief.

But in this case the demand for relief based upon the fraudulent character of the earlier transactions—transactions completed and the consideration paid—bore no relation to the suit to recover the amount admitted to be due under the later contract which was concededly valid. Such a demand did not arise "out of the same cause of action for which the original libel was filed" and could not be set up by way of counterclaim in it. See, in addition to the cases already cited upon this point, Davidson v. Greer (D. C.) 127 Fed. 999; Hastorf v. Degnon-McLean Contracting Co. (D. C.) 128 Fed. 982; Emery v. Tweedie Trading Co. (D. C.) 143 Fed. 144; The Frank Gilmore (D. C.) 73 Fed. 686.

We think it clear that the counterclaim did not come within the rule. Still for the purpose of testing the claims we will assume that the rule would permit the demand to be set up if it were otherwise unobjectionable. Upon this assumption we have to meet the libelant's

second objection that the relief prayed for in the cross-libel is outside the jurisdiction of a court of admiralty.

Ordinarily to obtain relief against a fraudulent contract made by a common officer of two corporations resort must be had to equity. Suit may be brought to enjoin the consummation of the transaction, or, if completed, it may be set aside. So, under certain circumstances, a bill will lie for an accounting.

In the present case the respondent contends that it is not required to go into equity, and says:

"The remedy of the Transportation Line, were it a plaintiff in an independent action, would not be in an action in equity for a rescission of the contract which it never made or ratified or if made by it were an oral contract, but would be an action at law based upon the equitable principle underlying the action for money had and received based upon implied contract or legal fraud."

Of course the action of assumpsit for money had and received, while in form an action of law, is based upon equitable principles, and it is by no means obvious that it would be broad enough to afford relief in the case of such a transaction as is stated in the cross-libel. Still, for the purposes of this case, we will assume that the contention of the respondent is well founded, and that an action at law would lie against the libelant corporation upon its implied promise to repay moneys received by it which in justice and good conscience it ought not to retain.

But the conclusion that an action of assumpsit might be maintained lends no support to the claim that the demand can be the subject of a suit in admiralty. Courts of admiralty have no more jurisdiction over actions at law (unless the subject-matter be maritime) than they have over suits in equity. Similarly, we think that a court of admiralty has no more power to take cognizance of a distinctly equitable or legal demand when it is set up in a cross-libel than when it is the subject of an independent suit. Probably a court of admiralty has incidental chancery powers and may afford some degree of equitable relief in matters subsidiary to and dependent upon the cause of action of which it has jurisdiction. But no such exception to the rule could arise in this case. While the vessels involved in the different transactions were the same, relief against the alleged fraudulent contract was in no sense dependent upon or subsidiary to the cause of action for the moneys admittedly due.

We thus reach the question whether the demand of the respondent was maritime in its nature so that it could come either by original or cross-libel within the jurisdiction of a court of admiralty.

It is, of course, well settled that courts of admiralty have no general equitable jurisdiction. When a maritime contract is broken, the admiralty can only award damages for its breach. This is the remedy which a court of law would give; but a court of admiralty in granting it acts in no sense as a court of common law. The admiralty grants relief, legal in its nature, when, and only when, the subject-matter of the suit is maritime. Admiralty has jurisdiction over maritime contracts, but it has none over contracts leading up to the execution of maritime contracts. And, upon similar principles, it can

have no jurisdiction over nonmaritime transactions following the execution of maritime contracts.

In Minturn v. Maynard, 17 How. 477, 15 L. Ed. 235, the Supreme Court of the United States said:

"The court below very properly dismissed the libel, for want of jurisdiction. There is nothing in the nature of a maritime contract in the case. The libel shows nothing but a demand for a balance of accounts between agent and principal, for which an action of assumpsit, in a common law court, is the proper remedy. That the money advanced and paid for respondents was, in whole or in part, to pay bills due by a steamboat for repairs or supplies, will not make the transaction maritime, or give the libelant a remedy in admiralty."

And in the later case of The Eclipse, 135 U. S. 599, 608, 10 Sup. Ct. 873, 876 (34 L. Ed. 269), the Supreme Court again said:

"While the court of admiralty exercises its jurisdiction upon equitable principles, it has not the characteristic powers of a court of equity. It cannot entertain a bill or libel for specific performance, or to correct a mistake (Andrews v. Essex Ins. Co., 3 Mason, 6, 16 [Fed. Cas. No. 374]); or declare or enforce a trust or an equitable title (Ward v. Thompson, 22 How. 330 [16 L. Ed. 249]; The Amelia, 6 Ben. 475 [Fed. Cas. No. 6,487]; Kellum v. Emerson, 2 Curtis, 79 [Fed. Cas. No. 7,669]); or exercise jurisdiction in matters of account merely (Grant v. Poillon, 20 How. 162 [15 L. Ed. 871]; Minturn v. Maynard, 17 How. 477 [15 L. Ed. 235]; The Ocean Belle, 6 Ben. 253 [Fed. Cas. No. 10,402]); or decree the sale of a ship for an unpaid mortgage, or declare her to be the property of the mortgagees and direct possession of her to be given to them (Bogart v. The John Jay, 17 How. 399 [15 L. Ed. 95]). The jurisdiction embraces all maritime contracts, torts, injuries, or offenses, and it depends, in cases of contract, upon the nature of the contract, and is limited to contracts, claims, and services purely maritime, and touching rights and duties appertaining to commerce and navigation. People's Ferry Co. v. Beers, 20 How. 393, 401 [15 L. Ed. 961]. There was nothing maritime about the claim of the interveners, and the intervention was properly dismissed for want of jurisdiction over the subject-matter."

And in the leading case of Suffolk Bank v. Lincoln Bank, 3 Mason, 1, 16, 17, Fed. Cas. No. 13,590, Judge Story said:

"To be sure in a certain sense, and in the exercise of their general jurisdiction, courts of admiralty may be properly said to be courts of equity, that is, courts proceeding ex æquo et bono, and not confined to the narrow notions of the common law. But courts of admiralty have no general jurisdiction to administer relief as courts of equity. They cannot entertain an original bill or libel for specific performance, or to correct a mistake, or to grant relief against a fraud. * * * If, therefore, anything in point of law, material to the plaintiff's case, depends upon this clause, and a mistake has occurred in omitting it, my judgment is that a court of admiralty is incapable of administering the proper relief. The remedy lies at common law, for damages for nonperformance of the original agreement, or in equity, for a specific performance by reforming the policy. In the present suit I can only deal with the policy, as it stands."

See, also, Meyer v. Pacific Mail Steamship Co. (D. C.) 58 Fed. 923; Marquardt v. French (D. C.) 53 Fed. 603; Williams v. Providence Washington Ins. Co. (D. C.) 56 Fed. 159; The City of Clarksville (D. C.) 94 Fed. 201; Dean v. Bates, 2 Woodb. & M. 87, Fed. Cas. No. 3,704; The S. C. Ives, 1 Newb. Adm. 205, Fed. Cas. No. 7,958.

The maritime contract was the one which the respondent says was fraudulent. It does not seek to enforce but to avoid that. It can-

not, however, have such contract set aside without invoking the equitable relief which a court of admiralty cannot grant. Moreover, even from this point of view, the matter is not maritime. The fundamental question is whether the general manager of the respondent corporation induced by his interest in the libelant corporation betrayed his trust. But this question is not maritime in its nature.

As we have already stated, the remedy of the respondent, if its charges be well founded, would seem to be in equity to set aside the alleged wrongful agreement and to compel an accounting. Perhaps, as we have also seen, an action in assumpsit for money had and received would lie. But a court of admiralty cannot afford the necessary equitable relief; nor can it grant the legal relief, because the implied promise to repay the moneys which cannot in good conscience be retained—necessary to support the action for money had and received—is not a maritime contract.

The decrees of the District Court are affirmed, with interest and costs.