## LUCKENBACH S. S. CO., Inc., v. BERWIND–WHITE COAL MINING CO.

(Circuit Court of Appeals, Second Circuit. June 8, 1925.)

### No. 335.

**1. Admiralty ⬅10—Admiralty has jurisdiction of libel for balance of demurrage, not asking equitable relief, though alleging mistake.**

Admiralty has jurisdiction of libel for balance of demurrage, to which defense is accord and satisfaction, notwithstanding amendment of libel merely alleging, in explanation of why all demurrage was not paid, that the parties had been under a mutual mistake of fact as to amount due, and respondent had furnished to libelant the misinformation out of which the mistake arose, though, had libelant alleged the accord, pleaded and proved by respondent, and prayed that for mutual mistake or fraud it be set aside, and relief granted, as if it had never existed, admiralty would have no jurisdiction, because the first and fundamental exercise of power demanded would be wholly nonmaritime.

**2. Accord and satisfaction ⬅12(1)—Compromise and settlement ⬅5(2)—Settlement held true accord.**

Where parties to charter party, quarreling as to whether cessation from labor by stevedores constituted a "strike," which would reduce demurrage, after correspondence and discussion, made a settlement, whereby libelant agreed to, and did, receive in full satisfaction of all claim for demurrage an amount which allowed for time of claimed strike, such settlement constituted a true accord.

Appeal from the District Court of the United States for the Southern District of New York.

Suit in admiralty by the Luckenbach Steamship Company, Inc., against the Berwind-White Coal Mining Company. Libel dismissed for want of jurisdiction, and libelant appeals. Modified.

Libel as originally filed stated a "cause of contract civil and maritime," and alleged a charter party between libelant and respondent whereby the latter hired steamship Lewis Luckenbach for a voyage from Chesapeake Bay to Rio de Janeiro, carrying a cargo to be discharged in lay days computed as per charter party, and providing for demurrage at a stated rate for all delays over said lay days.

The libel then alleged, in substance, that the steamship was accepted at Rio by the charterer, and was in readiness to discharge at 2 p. m. July 15, 1919, but was not in point of fact discharged until 8 a. m. of August 18th; wherefore libelant demanded the difference between demurrage accruing (over and above lay days) between said dates and the sum of $32,013.96, of which it acknowledged receipt, to wit, $62,415.31. Shortly after beginning suit, the libel was amended, so as to assert that the admitted payment of $32,013.96 by respondent to libelant was paid and received under a "mutual mistake of fact." The amendment then alleges facts concerning said alleged mistake of fact; the net result being an assertion that libelant was misinformed by respondent as to the existence of a strike or labor difficulties at Rio, so that libelant took and receipted for said $32,013.96 in full of its demurrage claim, and did so "relying upon this misinformation."

The answer put in issue the various allegations of the libel, and further stated that the captain of the Luckenbach on behalf of libelant, and respondent's agents at Rio acting on its behalf, signed a statement and agreement at Rio to the effect that the amount due libelant for demurrage was $32,-013.96, subject to some deductions, which have never been doubted or denied, and that this amount had been paid libelant by respondent several months after the vessel had been unloaded at Rio, and had been received by libelant "in full satisfaction and discharge of any and all claims for demurrage or detention to which libelant" was entitled under the charter of steamship Lewis Luckenbach.

Proof showed that charter party contained the usual clause affecting, inter alia computation of lay days and demurrage, viz. "strikes always mutually excepted." It further showed that, the Luckenbach having arrived in Rio and reported to charterer's agent, and being ready to unload, had no unloading work done upon her until 7 a. m. of August 1st, on the ground that a strike was then prevailing.

That there was a cessation of labor is admittedly true; whether it was anything more than a stoppage of work by those stevedores who were accustomed to unload for a certain Brazilian railway, because that railroad's storage facilities for coal were full and there was then no convenient room ashore for what the Luckenbach had brought, was a question in dispute. At the trial the master testified that his belief was that the strike was one of convenience, and while he was still in Rio he wrote his owners that the ship was on demurrage, but he doubted whether he could get the sum out of the consignees, because he thought that they were a "a bunch of crooks." He also distinctly told his owners that the only reason for the strike was that the railway would not take the coal from the consignee, and "as soon as the railroad *would* take more coal the strike was over."

The principal offices of both libelant and respondent were and are in New York City. No demurrage was paid until after the Luckenbach returned to New York. The master came home and told his story, and what the court below called an acrimonious correspondence took place between the parties, which, however, resulted in the statement of an account between them, in which the time of strike was allowed in diminution of the claim of demurrage, and the Luckenbach Steamship Company duly acknowledged receipt in payment of bill drawn accordingly for the net sum of $30,230.01, "in full for the above bill."

The court below dismissed the libel, because the question presented was not of admiralty and maritime jurisdiction, and libelant appealed.

Purrington & McConnell, of New York City (William A. Purrington and Frank J. McConnell, both of New York City, of counsel), for appellant.

Leo J. Curren, of New York City, for appellee.

Before ROGERS, HOUGH, and HAND, Circuit Judges.

HOUGH, Circuit Judge (after stating the facts as above). [1] Whether a given tri-

bunal has power to hear and determine a given question may depend on how it is presented. Thus many courts have no jurisdiction in divorce, yet the right to a divorce might be fixed forever by a finding as to conduct or status made in such a court. That a court of admiralty has not the powers of a court of equity is a matter we have passed on, and see no reason to dwell upon further. United, etc., Co. v. New York, etc., Line, 185 F. 386, 107 C. C. A. 442; The Kalfarli (C. C. A.) 277 F. 391. But it does not follow that admiralty may not investigate matters within its jurisdiction after the habit and in the manner of equity; on the contrary, it ordinarily does so.

When a question of jurisdiction in the larger sense is suggested, the first thing for investigation is the pleading—to see *how* the matter arises. The libel as filed herein suggests no possible question of jurisdiction; it alleges a claim for conventional demurrage, and says that respondent has paid only a part thereof; for the rest suit is brought. The amendment (which was totally unnecessary) only attempted to explain why all the demurrage had not been paid, viz. that the parties had been under a mutual mistake of fact as to how much was due and that respondent had furnished to libelant the "misinformation" out of which the mistake of fact arose.

How a mistake could be mutual, which rested on "misinformation" furnished to one party by the other, is not easy to see, but the point here is that the amended libel did not vary in legal effect from the original. The matter introduced by amendment gave a hint of a defense, but was immaterial; the prayer was never changed. The answer pleaded payment, or accord and satisfaction; it makes no difference how the effect of that pleading is stated. Such pleadings give a perfect instance of the importance of stating a question. The issue was whether there had been payment and/or an accord and satisfaction, and no one can doubt that this inquiry was wholly within the jurisdiction of admiralty.

The evidence showed that there was not, and never had been, a mistake of fact. There was a marked difference, if not a quarrel, between respondent's agents and libelant's captain, as to whether there was or was not a genuine strike, that genuinely prevented unloading the steamship, or whether the undoubted cessation of labor was anything more than a stoppage of work by a gang working for one railroad, a road that had bought the steamer's cargo of coal, which stoppage was used by the charterers to evade payment of demurrage as agreed. The discussion or quarrel was transferred to New York, and resulted in an agreement between the parties, reduced to writing in a very formal way, that libelant should take (and it did take accordingly), in full settlement of the demurrage claim here in suit, the amount admitted due by respondents, an amount which necessarily implied that the strike at Rio was a real strike, and within the meaning of the charter party.

On these pleadings, such a finding ends the case. It is ended technically, because an accord and satisfaction having been established, respondent's defense is established; and nowhere has libelant asked the court to set aside or vacate the accord proven. But if libelant had alleged the accord, and then prayed that for mutual mistake or fraud it be set aside and relief granted, as if it had never existed, then admiralty would have no jurisdiction, because the first and fundamental exercise of power demanded would be wholly nonmaritime.

To drop all forms or pleadings, and consider only the testimony, libelant's case is that respondent's agent falsely and fraudulently pretended that there was a real strike at Rio, respondent in New York adopted and persuaded libelant to accept this falsity, and on that basis the matter was settled; now libelant, having accumulated a lot of evidence in Rio, wants that settlement avoided. If libelant had pleaded its real case, admiralty would have had no jurisdiction; i. e., no power to grant the relief prayed for. It did have jurisdiction to consider the case actually presented on the pleadings, and the court below correctly found that respondent had proved the accord.

[2] That the settlement was a true accord is, we think, clear (vide Corp. Jur. and Bouvier Dict., sub nom. "Accord"), and we may add that there is no evidence whatever of *mutual* mistake. Whether there was sufficient evidence of fraud we are not called upon to say; no such issue was presented.

Decree below modified, so as to dismiss the libel, without any reference to want of jurisdiction. Costs of appeal to respondent.