**SOUTHERN COTTON OIL CO. v.
UNITED STATES et al.**

No. 8056.

Circuit Court of Appeals, Fifth Circuit.
June 26, 1936.

510

Edwin C. Hollins, of New Orleans, La., and Douglas D. Crystal and Forrest E. Single, both of New York City, for appellants.

William E. Collins, Dist. Counsel, U. S. Shipping Board, Merchant Fleet Corporation, of New York City, and Lucian Y. Ray, Sp. Atty. in Admiralty, and William I. Connelly, Senior Examiner, Insurance Division, U. S. Shipping Board, both of New Orleans, La., for appellees.

Before FOSTER, SIBLEY, and HOLMES, Circuit Judges.

SIBLEY, Circuit Judge.

The libel of the Southern Cotton Oil Company was filed October 27, 1932, against the United States and United States Shipping Board Merchant Fleet Corporation, formerly called United States Shipping Board Emergency Fleet Corporation, for damages to a cargo of peanuts shipped on the West Eldara, a merchant vessel of the United States, from Yokohama to Savannah in May, 1920, which in consequence of a stranding of the vessel in the vicinity of Honolulu was not delivered until March, 1921. A suit at law was filed in May, 1926, and dismissed because the sole remedy was in admiralty. See Johnson v. United States Shipping Board Emergency Fleet Corp., 280 U.S. 320, 50 S.Ct. 118, 74 L.Ed. 451; and this libel is filed by permission of the Act of June 30, 1932, 46 U.S.C.A. § 745. The respondents pleaded no liability under the provisions of the bills of lading and also a compromise and release of all claims made May 29, 1923. The issue of release was ordered separately tried. The release was sustained and a final decree entered dismissing the libel. This appeal follows.

The release in its material parts reads as follows: "The Southern Cotton Oil Company * * * for and in consideration of $17,500 lawful money of the United States in hand paid by the United States Shipping Board Emergency Fleet Corporation, the receipt whereof is hereby acknowledged has remised, released and forever discharged '* * * 'the said United States Shipping Board, The United States Shipping Board Emergency Fleet Corporation, and the United States of America, the South Atlantic Marine Corporation, their successors and assigns and each of them, the several steamships of said Company and of the United States Shipping Board and of the said United States of America * * * and in particular the Steamship Nonantum, her owners, etc., of and from all manner of actions, suits, liens, duties, dues, trespasses, damages * * * claims and demands whatsoever, whether at law or in admiralty, which against any or all of the aforesaid parties it ever had, now has or which its successors and assigns hereafter can, shall or may have upon or by reason of any matter, cause or thing whatsoever from the beginning of the world to the day or date of these presents: Provided, however, that there is expressly reserved from this release and nothing herein shall be construed as affecting any and all claims against the Atlantic, Gulf &

Pacific Steamship Corporation for loss and shortage of cargo."

The release is formally executed by the vice president and secretary of the Southern Cotton Oil Company under the corporate seal. The voucher on which the $17,500 was paid is signed by T. B. Keene for the Fleet Corporation and approved by its director of finance. It is certified as correct for the Southern Cotton Oil Company by Peyre Gaillard, and states its office thus: "S/S Nonantum and others: Representing acceptance in full satisfaction of all claims against the United States of America, United States Shipping Board and/or United States Shipping Board Emergency Fleet Corporation, except loss and shortage claims now pending against the Atlantic, Gulf and Pacific Steamship Company. Approved by Board Resolution April 30, 1923. All papers on file with Claims Division, Traffic Department."

We have no hesitation in holding that these papers on their face show a payment of $17,500 in extinguishment of all existing claims against the United States, the Shipping Board Corporations, and their vessels as well as of those against the steamship Nonantum, excepting only those claims reserved by the proviso. Their terms suggest that there was a particular settlement of some claim against the Nonantum, but they declare that the $17,500 was not paid and received for that alone but also in satisfaction of all others between these parties. The special exception of certain claims pending against the Atlantic, Gulf & Pacific Steamship Corporation makes it plain that no others were excepted and that what was signed was no meaningless form nor a particular release of one claim against the Nonantum, but was a general release of all claims between the named parties except those specially reserved. The claim here asserted concerning the West Eldara was in existence and in dispute between these parties when the release was given. It was extinguished by it. United States v. William Cramp & Sons Ship & Engine Bldg. Co., 206 U.S. 118, 27 S.Ct. 676, 51 L.Ed. 983; St. Louis, etc., Ry. Co. v. United States, 267 U.S. 346, 45 S.Ct. 245, 69 L.Ed. 649.

The libelant, however, asserts that the only thing intended to be settled was a claim touching a particular voyage of the Nonantum, and that the broad terms in the papers were used by a mutual mistake of the parties. To sustain such an attack upon documents deliberately executed by experienced persons dealing at arm's length, clear and satisfactory evidence is required of a mistake on both sides. Libelant is not asking to rescind the settlement by paying back the money it got and resuming the whole dispute as it was, but is seeking to keep what it got and to deny the writings under which it obtained it. This is in effect to reform them, carrying the necessity of clearly proving that the opposite party understood that there was not a settling of all claims and especially not of that now asserted. The important witnesses are testifying more than ten years after the transaction, have been long engaged in other businesses, and have had no personal interest and no particular reason to hold it in memory. Peyre Gaillard, who negotiated for libelant, alone professes to have a clear recollection about it, but confidence in his testimony is weakened by his demand on his former employer to be "well compensated" if he should go into this case. We think the most weighty evidence is to be found in the contemporaneous correspondence and inter-office memoranda which have been preserved. Briefly reviewed, these show the following: Before the West Eldara reached Savannah libelant took advice of counsel and was told there was no recourse for the delay and damage against the sellers of the cargo; and that: "The bill of lading under which the goods were forwarded also relieves the carrier from liability. The ship is allowed on its voyage from Yokohama to Savannah to touch at any port * * * so that no question of deviation arises. The matter comes down, therefore, to whether your policy of insurance will help you out." The claim made against the carrier after unloading was firmly rejected. Later the ship put the matter of its stranding into the hands of general average adjusters. Matters stood until September, 1922, when libelant turned its claim over to Gaillard. The next month he thus wrote to his superior officer: "While there is no legal liability, as has formerly been stated by our counsel, there is some chance I believe of getting money out of the Shipping Board, taking into consideration their present policy." After a conference in Washington in which the suggestion was made by the representative of

the Fleet Corporation that it might be well to consolidate the five or six claims which the Southern Cotton Oil Company was making, Gaillard on November 10, 1922, presented these by letter: Steamer Nonantum, $46,968; steamer West Cobalt, $2,250; steamer Lake Fostoria, $380; steamer Lake Helen, $220; steamer West Eldara, $196,283; steamer Chattanooga and steamer Shooters Island not determined, but estimated to raise the aggregate to $300,000. The letter said: "While there is perhaps some doubt as to Shipping Board liability, we ·believe it is not their policy to pass unnoticed such excessive losses as were suffered by the Southern Cotton Oil Company in their endeavor to patronize the American Merchant Marine." Five days later Gaillard wrote to the Fleet Corporation respecting the West Eldara claim: "While perhaps the contention can be made that there is no legal liability, we do not believe that the United States Shipping Board are going to pass this claim by in the face of the gross negligence and carelessness that were apparent in the handling of this vessel." On February 1st the claims were separately declined as being without merit, except that the one against West Eldara was said to be in the hands of general average adjusters to report later, and that against Nonantum was not replied to. Protesting. the rejections Gaillard then wrote: "When I filed these claims it was conceded that we had not a clearly defined legal foundation to stand on, and we simply presented the claims against the foregoing ships (including West Eldara) to show those in authority what losses the Southern Cotton Oil Company had suffered in an endeavor to patronize the American Merchant Marine." He requested that all the claims be recalled and *reconsidered as a whole.* He then in person took the matter up with the Fleet Corporation's vice president, who instructed its negotiator to work out some settlement in conference with Gaillard; and one of $17,500 was arrived at based mainly on the loss of market for a cargo on the Nonantum. No report from Gaillard to his superior appears. The Fleet Corporation negotiator reported to the vice president that the loss on the Nonantum was figured at $17,450.54, and added: "The Southern Cotton Oil Company have a claim against our West Eldara for $198,000; a claim against the West Cobalt for $2,250; and against the Chattanooga for $40,000. They agreed to withdraw these claims for a settlement of $17,500 on the claim in question. We recommend settlement on this basis, and attach copy o'f Board Resolution." He also notified another department to the same effect. The vice president approved the settlement. On April 30th the board of trustees of the Fleet Corporation adopted a resolution which recites details of a loss of $17,400 by the ship Nonantum, and that Southern Cotton Oil Company has several other large claims against the Shipping Board and has offered to accept $17,500 in full payment of all claims which it has against the Shipping Board or the Emergency Fleet Corporation except loss and shortage claims against Atlantic, Gulf & Pacific Steamship Corporation, and therefore resolves that the proper officers be authorized to accept the offer and make necessary papers to carry it out and to pay $17,500 upon receipt of release satisfactory in form to · general counsel. The letter dated May 3d which carried the voucher to Southern Cotton Oil Company stated that the amount of $17,500 represented full and complete settlement of any and all claims against the United States of America, United States Shipping Board, or United States Shipping Board Emergency Fleet Corporation except loss and shortage claims pending against Atlantic, Gulf & Pacific Steamship Corporation. The voucher as above quoted was approved and returned by Southern Cotton Oil Company with request to send check as soon as possible. The release was on May 29th executed by the head office. We see no room to doubt that it was intended to settle not alone the claim against the Nonantum which was treated as having most merit, but also all those others which had been presented not indeed as legally enforceable but rather as makeweights in the negotiation. We see no great force in the fact that general counsel struck from a first draft of the release a reference by name to the West Eldara and other ships. He did not negotiate the settlement nor agree to it for the board, but was merely to determine the form of the release. The words he left in it are ample to express the settlement as the vice president and the board understood and agreed to it. The officers of the Southern Cotton Oil Company could not on reading the papers have understood it as other than a general settlement with the stated exception, even

though Gaillard as he says understood otherwise. That general average adjusters were working on the West Eldara, and that this had been given as a reason for not considering libelant's claim as to that vessel, did not prevent a subsequent consideration of the claims as a whole as Gaillard requested, and including in the settlement any possible liability on her. The Nonantum also was being handled in a general average adjustment. No case of mutual mistake appears.

█ The original libel did not mention any insurer as interested in the recovery. On the day of the trial by amendment it was prayed that libelant appear as suing in its own behalf and on behalf of Yokohama Fire & Marine Transit & Fidelity Company as insurer, and it was so ordered. The policy of insurance was not put in evidence, nor was direct proof made that the insurer had paid before or since the release any part of the damage to the cargo. It is, however, indirectly indicated in the evidence that the Yokohama Company had insured libelant and had paid a sum of $13,-000 in particular average before the release was made and a larger sum in general average since, and that this was known to respondents. The trial court held this indirect evidence to be too uncertain for its notice. We agree that if any special right of the insurer not extinguished by the release is to be set up there ought to be definite and direct proof. There was a want of diligence in not timely presenting it which well merits the refusal of costs. A motion, however, was made within thirty days after the court's decision to reopen the case that further evidence might be taken on this point and the motion was refused. We think the ends of justice would be served by granting it and permitting the assertion of the special rights of the insurer which survive the release and are not otherwise barred if it has any. We will accordingly reverse the judgment dismissing the libel, but without costs of appeal, and with direction to permit further evidence and consideration of any peculiar rights which the usee Yokohama Fire & Marine Transit & Fidelity Insurance Company may be entitled to have asserted.

Judgment reversed, without costs of appeal.